INSURANCE COS. *v.* SCALES.

(*Nashville.*    January 14, 1899.)

1. SUPREME COURT.  *Will not reverse for admission of evidence, when.*

This Court will not reverse on account of the admission of hear-
say or secondary evidence where there was no exception or
ruling in the lower Court, otherwise than by that Court's
refusal to give in charge a request upon the subject.  (*Post,
pp. 632, 633, 640.*)

2. SAME.  *Will not reverse for exclusion of witness' answers, when.*

This Court will not reverse on account of the lower Court's
exclusion of a witness' answers to pertinent questions, when
the record fails to show any exception to the Court's ruling,
or the answers that the witness would have made, or that
such answers would have been material.  (*Post, pp. 632, 633.*)

3. CHARGE OF COURT.  *Refusal of request proper, when.*

It is not error for the Court to refuse to charge, by special
request, that the jury should not consider the statements of
certain witnesses because they were hearsay, where the state-
ments were admitted without exception and no request was
made for their withdrawal.  (*Post, pp. 632, 633.*)

4. SAME.  *Requisites of assignments of error as to evidence.*

Assignments of error relating to erroneous admission or exclu-
sion of evidence must be specific and point out the pages of
the transcript where the evidence, exceptions thereto, and
rulings thereon, may be found.  (*Post, p. 634.*)

5. FIRE INSURANCE.  *"Legal representatives of the assured" defined.*

Under a fire policy providing that the term "insured," when
used therein, shall mean and include "legal representatives
of the assured," a mere agent, *e. g.*, the husband of the as-
sured, is not included, but only those persons bearing the re-
lation to him of assignee, executor, administrator or heir.
(*Post, p. 635.*)

Case cited: 102 Mich., 334.

Insurance Cos. *v.* Scales.

6. SAME. *Fraudulent and false proofs of loss do not avoid policy, when.*

A fire policy upon property of a married woman, which, by its terms, is forfeited by the fraud or false swearing of the insured, or his "legal representatives," occurring either before or after loss, is not avoided by the fact that wrongful and fictitious items were included in the proofs of loss by the fraud of the husband, without the knowledge or participation of the wife, the former having, as agent of the wife, attended to her business, and she having, without actual knowledge of the facts, relied upon information from him without further investigation, and both having joined in the verification of the proofs of loss. (*Post, pp. 634–639.*)

7. SAME. *False swearing that avoids a policy.*

Under a policy that provides for forfeiture for fraud or false swearing of the assured, the statements that will avoid it, if made by the assured, must be willfully false in some material matter and made with intent to deceive the insurer, and if the false statements are made by an agent of the assured, the latter must have known of or acquiesced in their falsity. (*Post, p. 638.*)

Case cited: Insurance Co. *v.* Munday, 5 Cold., 547.

8. SAME. *Fraud or falsehood in proofs of loss.*

A policy will not be avoided so readily upon a charge of fraud, or false swearing, in proofs of loss as upon a like charge of fraud or false swearing in the application. (*Post, p. 639.*)

9. SAME. *Contractual limitation of action not effective, when.*

The provision in an insurance policy that no action shall be brought thereon after the expiration of six months from the date of the fire, does not operate to bar an action brought more than six months after the fire, where the policy likewise contained provisions that no action should be brought within sixty days after the fire and until arbitration had been attempted and had failed, and the action was brought within six months after expiration of the sixty days and within six months after failure of arbitration. (*Post, pp. 640–642.*)

10. SAME. *Contractual limitation begins to run, when.*

The contractual limitation of action found in an insurance policy, though expressed, in terms, as a certain period "after the fire," or "after the loss," does not become effective or begin

Insurance Cos. *v.* Scales.

to run until the right of the assured to sue has accrued under the other provisions of the policy. (*Post, pp. 641, 642.*)

11. SAME. *Contractual limitation must be set up by plea.*

The contractual limitation of action found in a policy of insurance must be set up by plea, unless it can and has been raised by demurrer. (*Post,.p. 641.*)

12. BILL OF EXCEPTIONS. *"Proof closed."*

The statement "proof closed" is not the equivalent, in a bill of exceptions, of the expression that "this is all the evidence." (*Post, p. 642.*)

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. JOHN W. CHILDRESS, J.

PILLOW & TYNE for Insurance Cos.

J. S. PILCHER and J. C. BRADFORD for Scales.

WILKES, J. This consolidated record embraces four separate actions against different fire insurance companies, but, as they involve substantially the same questions, they have been tried together.

Mrs. Grace C. Scales and Medora Waller, partners, are the parties insured, and the subject is a stock of goods, wheeled vehicles, etc., contained in a house on Cherry street, Nashville, Tenn. There was a trial before the Court and a jury in the Court below, and a verdict and judgment against the insurance companies, and they have appealed to this Court and assigned errors. The title to the property insured was in Mrs. Scales and Mrs. Wal-

ler, as partners, and the business was carried on in their names, but by their husbands, and principally by Mr. Waller. The ladies took no active part in the business, and knew personally but little of its operations. The policies were taken out by the husbands—two of them in the names of the ladies, and the other two in the firm name of Scales & Waller, and no question is made but that this meant the firm composed of the two ladies. No question is made in the record as to the title to the property being in the married women, as partners, or that the insurable interest was in them, but stress is laid upon the fact that the business was wholly managed by the husbands, as explaining other matters appearing in the record.

The fire occurred on the 27th of June, 1897. On the 15th of July thereafter there was an agreement to arbitrate, which was only partially executed, and no award was made. Afterwards proofs of loss were filed with the company. These were prepared by the husbands, and, it appears, principally by Scales, and were sworn to by both husbands and wives. These proofs purport to contain itemized schedules of the property damaged and destroyed, and are sworn to as correct by the married women, and separately by the husbands, to the best of their knowledge, information, and belief, in each affidavit. After examining these proofs, the companies, on the 14th of September, 1897, notified the assured and their husbands that they denied all liability on the

policies, and declined to · pay the same or any part thereof. The suits were brought on the 8th of January, 1898. Many errors are assigned.

It is insisted that the Court erred in overruling the objection of the companies to the evidence of D. C. Scales and W. H. Allen as to the character, value, and quantity of goods damaged and destroyed. The specific objection made in this Court to this evidence is that it is based largely, if not entirely, upon an itemized statement made out by other parties, principally R. W. Waller, and hence it was hearsay and secondary evidence, and showed on its face that it was not the best evidence obtainable.

We are precluded from passing upon this assignment upon its merits, as we fail to find from the record that any proper exception was made and acted upon in the Court below. We are not cited in the assignment to any page of the transcript where such exception may be found, and it is asserted by opposing counsel that no such exception appears, and we have been able to find none. It is said that the attention of the Court was called to the fact that the evidence offered was not the best that could be obtained, and he was requested to charge upon this feature of the case that the evidence must, therefore, be rejected. But the question cannot be raised in the charge only, and no objection having been made to the evidence when offered, it must stand as not excepted to.

In the reply to appellee's brief, it is said a

proper exception to the evidence of D. C. Scales is found on page 76 of the transcript. Upon examining this we find that defendant's counsel did attempt to object to Scales' statement, and was proceeding to state his objection when witness interrupted with an explanation. The objection was not renewed, and was never completed and never acted on by the Court, and hence cannot be considered in this Court.

It is said the Court erred in refusing to allow counsel for the insurance companies to ask Mr. Waller to explain the difference in items contained in the proofs of loss made to the adjusters, and other statements afterward made. No exception appears to have been taken to this refusal and ruling of the Court at the time, and it does not appear what the witness would have stated, or that the explanation was within his knowledge or material to the issues involved, and we are precluded from considering it. In the reply brief it is said that a proper exception will be found on page 185, but we find that the exception on page 185 was not to any statements made by Mr. Waller to, but statements made by, Mr. Wrightman and about a distinctly separate matter, which the Court thought was not pertinent.

It is objected that the Court refused to let counsel for the companies ask W. R. Waller whether he obtained some blank billheads from Carpenter Bros. It does not appear what the witness would have stated in response to the question, so that this objection is not in shape for our consideration.

None of these assignments comply with the rule. None of the exceptions were properly made. An exception to evidence must be made when it is offered, and the ground of exception must be specifically pointed out. It must appear that the Court adversely acted upon the exception, and, if it is to the rejection of testimony, it must appear, from the record, what the witness would have stated, if allowed to answer, in order that this Court may see that it is material. The assignment of errors must always point out the page of the transcript where such exceptions and the evidence excepted to may be found. We may add, however, that we think these exceptions could not be sustained if properly made.

The fourth, fifth, and sixth assignments may be considered together. It is said that the Court erred in charging the jury that, if there were any fraudulent and wrongful items embraced in the proofs of loss, it must be shown that they were included with the knowledge and by the consent of the ladies insured, and that the fraudulent acts and intent of R. W. Waller, as their agent, could not defeat their right of recovery, unless they knew of the fraud or ratified it after it came to their knowledge; and that the Court should have charged the jury that, if Mrs. Scales and Mrs. Waller adopted any false statements made by their agents, without investigating the facts, they thereby became guilty of fraud themselves, and the jury should find against them;

and that, if they made representations as to know-
ing the facts, when they had no knowledge, and the
representations proved to be untrue, that would be
fraud within the provisions of the policy, and would
defeat any recovery.

These assignments present the merits of the con-
troversy.    As bearing upon them, it is insisted that
the terms of the policy are important.    It is pro-
vided in the policy that, in case of any fraud or
false swearing by the assured touching any matter
relating to this insurance or the subject thereof,
either before or after the loss, the policy shall be
voided; and, again, the policy provides that, when-
ever, in this policy, the .term "insured" is found,
it will be held to include the legal representatives
of the assured.    We are of opinion that the con-
tention of appellants derives no strength from the
use of the term, "legal representative of the as-
sured."    Used in this connection and in regard to
the subject-matter, this term means parties bene-
ficially interested by law or contract in the policy,
such as an assignee, or the executors, administrators,
and heirs of the assured, and not to persons who
are merely agents of the insured.    *Metzger* v. *Man-
chester Fire Ins. Co.*, 102 Mich., 334.

The brief filed with the assignment of errors
states that the insurance companies repeatedly intro-
duced proof showing fraud and false swearing on
the part of Waller, the agent of the insured, which
the Court excluded on the ground that his false

swearing was not material, and that the Court instructed the jury not to consider the same in making up their verdict, unless it was shown that assured knew of the false swearing. The appellants have given no references to the record where such evidence was offered and objected to and excluded, so that we can only treat such matters as the appellees have pointed out, and such as we have been able to find in the record, which we have done without conforming to the rule. As touching on this general question, it appears that the preliminary proofs were made out by the husbands, Scales and Waller; they were accepted and adopted, without investigation, by the insured, and were sworn to, without actual knowledge on their part, and they were thus rendered to the companies. The argument is, that an active duty devolved upon the insured to examine the statements and satisfy themselves of their truth. The appellants have introduced, in a very able brief, quite a number of authorities to support their contention that actual knowledge of fraud need not be shown. The case most nearly in point is *Mullen* v. *Vermont Mut. Ins. Co.*, 58 Ver., 113. It was a case where the loss was of household goods, and the husband left to the wife the duty of making out the list, and swore to it without examination, and without knowing whether it was correct or not. The inventory contained many false statements, calculated and intended to work fraud, and it was held that the insured husband

thus made the fraud of the wife his own, and that it was improper to rest liability on the intention and knowledge of the husband. This is a strong case, and goes, as we think, to the very verge of the law, if it is not, indeed, contrary to the current of authority. The facts in that case are, however, different from those in the present case in several very important features. In that case it is said that the representations must be true in fact. If this is intended as an absolute requirement, it is clearly out of line, for it leaves no room for honest mistakes or innocent want of knowledge. Such a rule might apply when the statements are made in the application upon the idea that they form the basis of the contract, and, if acted on, one of two innocent parties must suffer, and, in such case, he must suffer who has caused the error. But such a rule, when invoked to cause a forfeiture, would be contrary to reason and authority. The case was one of either gross fraud or reckless negligence on the part of the husband, in leaving the whole matter to his wife, and indorsing her inventory without examination. Here the business was in the hands of the husbands, and they were familiar with it, and the wives were not. The wives could only get the information through their husbands, who gave them assurances of good faith by themselves swearing to the statements. In accord with appellants' view of the case, we are cited to some other authorities: *Leech* v. *Ins. Co.*, 58 N. H., 246; 1 Bid-

dle on . Insurance, Sec. 446; *Knop* v. *National Ins. Co.*, 65 N. W. R., 228.

It appears that much depends upon the facts of each case, and when there is from the record very strong evidence of negligence it will be taken as presumptive evidence of fraud, and in a number of cases the rule has been applied as contended for by appellant's counsel, with more or less of strictness. We are of opinion, however, that the weight of authority is that statements must be willfully false in some material matter, and made with intent to deceive the insurer, in order that they shall have the effect to defeat the policy, and if this is true as regards the false swearing of the assured, it is true when applied to the false swearing of an agent when the falsity is not known to or acquiesced in by the assured. Joyce on Insurance, Sec. 3339; *Phœnix Ins. Co.* v. *Munday*, 5 Cold., 547; *Phœnix Ins. Co.* v. *Swan*, 41 S. W. Rep., 519; *Lion Ins. Co.* v. *Stan*, 12 S. W. Rep., 42; *Runkle* v. *Hartford Ins. Co.*, 68 N. W. Rep., 712; 99 Iowa, 414; *Tubb* v. *Ins. Co.*, 84 Mich., 646; *Maion* v. *Ins. Co.*, 35 Mo., 148; *Williams* v. *Phœnix Ins. Co.*, 61 Md., 67; *Merrill* v. *Ins. Co.*, 23 Fed. Rep., 247; Beach on Insurance, Secs. 808–809; May on Insurance, Sec. 477. The case of *Metzger* v. *Manchester Fire Ins. Co.*, 102 Mich., 334; 63 (N. W. Rep., 650), is a case almost identical in its facts, and in the provisions of the policy sued on, with this case. There the fraud of the husband was

gross and glaring, but the Court held that the wife could not be affected by it inasmuch as she was innocent of the fraud. That case also intimates a distinction between cases of false swearing in the application for insurance and false swearing in the proofs of loss after it happens. And there must, from the nature of things, be a difference between the cases, even though the policy provide that false swearing, either before or after the loss, shall vitiate the policy.

When the false swearing is in the application it forms the basis upon which the contract rests, and if fraud enters into it the policy would be voided even though the policy does not so provide. But after the loss occurs then voiding the policy is in the nature of a penalty or forfeiture; in other words, in such cases the holding is virtually that, although the insured has had a loss, and may be entitled to recover from it, yet, as he has been guilty of fraud in the proofs, he must have his policy vacated and set aside as a punishment for such fraud, or attempted fraud. In the latter case, as in all cases of forfeiture, a strict construction should be adopted, and the forfeiture not enforced except on the plainest grounds, if at all. Without going into detail, we state that we have been able to find no such evidence of false swearing and fraud as appellant insists upon, and he has not cited us to the pages of the transcript where it may be found.

It is said the Court erred in not stating to the jury that they should not consider the statements of witnesses made upon information as to loss, and value and quantity of goods. It was not error to decline to give this charge, inasmuch as the evidence had been heard without valid objection, and was, therefore, permissibly and properly before the jury.

It is said the Court erred in not charging that the plaintiff must prove to the satisfaction of the jury that the goods were destroyed, otherwise they could not recover. This request is not strictly correct, inasmuch as it leaves out of view damage to goods not destroyed. The Court correctly instructed the jury on this point. The real point of this objection is that the Court did not tell the jury to disregard the testimony of witnesses who, it was claimed, made their statements from hearsay, and this feature of the case has already been disposed of.

One of the policies provided that no action should be brought after the expiration of six months from date of the fire. The fire occurred June 27, 1897, and the action was commenced January 8, 1898, or about six months and eleven days after the fire. The Court below held that this was a valid provision, but that the limitation was suspended during the period consumed in the attempt to arbitrate. The time consumed in this attempt does not appear further than that suit was delayed four months after the absolute refusal of the companies to pay.

It appears that this contract limitation was not set up by plea, and this we think is fatal to it as a defense. Such contract limitation, like the statute of limitations, must be pleaded if intended to be relied on. *Ketchum* v. *Protection Ins. Co.*, 1 Allen (N. B.), 136; *Barboru* v. *Fire & M. Ins. Co.*, 18 W. Va., 658; Bacon Ben. Societies Sec. 447. We do not mean to say it may not be raised by demurrer when the policy is made an exhibit and the terms of the contractual limitation appear. But, in addition to this, the limitation in this case is not a bar to the suit. The limitation of "so many days after the fire" has been construed in a number of cases to mean so many days "after the cause of action accrues." Under the provisions of these policies no suit could be brought until after arbitration and award, and until the failure of such arbitration no cause of action accrued, nor could action be brought under the policies until after sixty days. It might be that such arbitration might pend for the entire limited time, and under a different construction no action could be brought at all. The limitation begins to be effective from the time the right of action accrues, notwithstanding the expression "after the fire." *Case* v. *Ins. Co.*, 83 Colo., 473; *Finzen* v. *Ins. Co.*, 30 Fed. Rep., 352 (27 Pacific Rep., 80); *Owen* v. *Howard Ins. Co.*, 10 S. W. Rep., 117; *Sample* v. *London Ins. Co.*, 24 S. E., Rep., 334; *Vett* v. *Clinton Fire Ins. Co.*, 30 Fed. Rep., 668; *Steen* v. *Niagara Ins. Co.*, 80 N. Y.,

315; *New York* v. *Hamilton Fire Ins. Co.*, 39 N. Y., 45; *Chandlee* v. *St. Paul Ins. Co.*, 21 Minn., 85; *Span* v. *Mutual Ins. Co.*, 17 Fed. Rep., 568; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y., 235; May on Insurance, Sec. 479. In *Steel* v. *Ins. Co.*, 154 U. S., 578, it was held that "after the fire" and "after the loss" were the same thing, and that the limitation of twelve months after the fire must be construed to mean twelve months after the limitation of the sixty days in which payment might be deferred under the terms of the policy and when suit could be brought. Clearly, the time limited by contract in this policy had not expired under this construction of its terms when the suit was brought, and the limitation cannot avail. The amount of loss in these cases is fully shown to have been in excess of the policies, and we can see no reason why it should not be paid. The bill of exceptions fails to state that it contains all the evidence, but instead there is an entry, "Proof closed." This is not the equivalent of the expression that "this is all the evidence," and if there is in the record any paucity of proof it could not avail on this appeal, as the Court will presume there was sufficient evidence to sustain the verdicts.

The judgment of the Court below is affirmed with costs.