No. 43,022

VIRGIL WAUGH, *Appellant,* v. AMERICAN CASUALTY COMPANY, *Appellee.*

(378 P. 2d 170)

Opinion filed January 26, 1963.

*James H. Hope,* of Topeka, argued the cause, and *J. Wm. Townsend* and *John E. Jandera,* both of Topeka, were with him on the briefs for the appellant.

*E. Edward Johnson,* of Topeka, argued the cause, and *L. M. Ascough, John A. Bausch,* and *J. H. Eschmann,* all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from an order sustaining a general demurrer to a third amended petition filed by a common carrier against his cargo insurer.

The facts to which the legal principles are to be applied must be gleaned from the petition.

Virgil Waugh is a common carrier by motor vehicle and holds a certificate to operate as such from the State Corporation Commission and the Interstate Commerce Commission. Waugh carried cargo insurance under a policy issued by the American Casualty Company.

The determination of this controversy will depend largely on the interpretation of the provisions of the policy. The extended provisions, conditions and endorsements, insofar as here pertinent, will be summarized.

The primary policy was dated July 8, 1958, and was to continue in force and effect until cancelled. The total coverage was in the amount of $140,000.00 applying to property of the insured. The terms and conditions of the primary policy are not material here.

Attached to and made a part of the primary policy were provisions for motor-truck cargo insurance which provided in part as follows:

"This policy covers the legal liability of the Assured as carrier, bailee or warehouseman under tariff, bill of lading or shipping receipt issued by the Assured, for direct loss or damage, from perils hereinafter specified, on shipment of lawful goods or merchandise (hereinafter called property) consisting principally of Oil Field Machinery, Equipment and Supplies. While loaded for shipment and in transit in or on vehicles owned, leased or operated by Assured (or vehicles described below or in schedule attached to and forming a part of this policy) within the continental United States and Canada.

"This company's liability is limited to Ten Thousand and no/100 Dollars ($10,000.00) for loss of or damage to Property upon any one vehicle, and to Ten Thousand & no/100 Dollars ($10,000.00) on account of claims arising out of any one disaster at one time.

. . . . . . . . . . . . . .

"This Policy insures the Assured's legal liability for loss or damage to property insured hereunder directly caused by

"(a) fire, including self-ignition or internal explosion of the vehicle, and lightning;

"(b) collision, i. e., accidental collision of the vehicle with any other vehicle, or object . . .

. . . . . . . . . . . . . .

". . . It is understood and agreed that books and records will be kept by the Assured in such maner that the exact amount of loss or damage can be accurately determined by the Company. The books and records of the Assured shall at all times during business hours be open to an authorized representative of the Company.

". . . In case of loss or damage, no goods or merchandise shall be valued in excess of the net cost to the shipper to replace with like kind and quality. If replacement cannot be effected, or if the net cost of replacement would exceed the invoice price, the limit of this Company's liability

shall be the invoice price of said goods or merchandise to the consignee. In the absence of an invoice, bill of lading or shipping receipt (stipulating values) the value of the goods or merchandise subject to claim hereunder shall not exceed the cash market value on date and at place of shipment.

". . . All adjusted claims shall be paid or made good within thirty (30) days after presentation and acceptance of satisfactory proofs of interest and loss at the office of this Company. No loss shall be paid hereunder if the Assured has collected the same from others.

. . . . . . . . . . . . . . .

". . . It is expressly agreed that upon payment of any loss or advancement or loan of monies concerning the same that the Assured will at the request and expense of the Company and through such counsel as the Company may designate, make claim upon and institute legal proceedings against any carrier, bailee, or other parties believed to be liable for such loss and will use all proper and reasonable means to recover the same."

Attached to the policy was an endorsement providing in part as follows:

"It is understood and agreed that the policy to which this endorsement is attached is written in pursuance of and such policy shall fulfill the insurance requirements of Section 66-1,128 General Statutes of Kansas 1935, or as may be hereafter amended, and the rules and regulations of the State Corporation Commission adopted thereunder with respect to liability for damage to and loss of cargo. The obligations and promises of this endorsement, however, shall be effective only while the equipment covered by this policy is being operated within the State of Kansas."

On or about March 4, 1959, Waugh undertook to transport a swab tank in one of his trucking units for KNOT Contractors, Inc. The amended petition alleges:

". . . While traveling down an unlisted public county road south of Slapout, Oklahoma, the trucking unit being operated by the employee of plaintiff did come in contact with the overpass located on said road. That that portion of the truck's cables and support came in contact with said overpass. That as a result of said collision the trucking unit and cargo were damaged. That said plaintiff duly reported the disaster to defendant, and that the defendant through its agent, servants and employees admitted liability and offered to pay for the damage to the swab tank in excess of $800.00. That all papers in regard to said damage are in the hands of the defendant. That said plaintiff objected to the payment of the damage to said swab tank as claimed by KNOT Contractors, Inc. for the reason that some of the damage to the swab tank was pre-existing and that from said plaintiff's belief and knowledge, the damage was only in the amount of $350.00. Defendant at all times advised plaintiff that it stood ready, willing, and able to pay said claim."

On or about August 19, 1959, Waugh undertook to transport a pumping unit for Texaco, Inc., and as part of the consideration

agreed to carry cargo insurance as required by the laws of the State of Kansas, the rules and regulations of the State Corporation Commission and the Interstate Commerce Commission. With respect to this cargo the same pleading states:

"Plaintiff took and assumed possession and control of said pumping unit in Beaver County, Oklahoma, on August 19, 1959, and loaded it on one of his trucking units used in the common carrier motor service. That the fair value of said goods at the time and place were in excess of $35,000.00. That on said occasion and while said cargo was within the exclusive and complete control of plaintiff, the motor unit being operated by and under the direction of plaintiff by his employees was traveling down the public highway at approximately three miles east of Wellington, Kansas, and while so traveling the truck's cables and supports collided with a portion of the overpass located on said highway. That as a result of said collision the trucking unit and cargo under the control of plaintiff were damaged while in transit. That the damage incurred to the cargo while in transit was $4,677.66.

"That the plaintiff assured immediately notified and reported to the defendant or its agent the loss or damage above described. That the defendant after receiving all the information from the plaintiff assured, then and there advised the plaintiff that the defendant company would not pay the plaintiff or any other person for the damage above described for the reason that there was no coverage under the contract of insurance. At the same time the defendant then for the first time denied liability to the plaintiff or anyone else under the collision occurring on or about March 1, 1959, for the reason that there was no coverage under the contract of insurance. That the plaintiff immediately upon being notified by the defendant that the above described cargo losses were not covered by the cargo insurance contacted the defendant and its agent, servants, and employees. That the plaintiff protested the ruling of the defendant and asked for reconsideration because of the position of peril that the plaintiff was being placed in by the contentions of the defendant. That the defendant again advised the plaintiff that they were denying any liability to the plaintiff or anyone else upon the grounds that the contract of insurance did not cover the above described cargo losses."

The amended petition further alleges that as a result the defendant's denial of the coverage under the cargo insurance Waugh had to negotiate his legal liability for the cargo losses, and has become indebted and liable to KNOT Contractors, Inc. in the amount of $350.00 and Texaco, Inc. in the amount of $4,677.67.

In the prayer of the amended petition plaintiff asked for judgment in the amount of $5,027.66 with attorney's fees and costs.

Defendant demurred to the third amended petition on the ground it failed to state a cause of action. Subsequently the district court entered an order sustaining the demurrer. Neither the demurrer

nor the order state in what particulars the allegations of the petition were insufficient.

In its brief appellee states its position as follows:

". . . the provisions [of the policy] specifically point out that the policy 'covers' or 'insures' the assured's '*legal liability*' for damages to property of others which may be caused while being handled by the assured, the appellant here.

. . . . . . . . . . . . . . .

"It is suggested to the court that the insurance policy here involved, the terms and provisions of which are set out in full in appellant's abstract, is one of indemnity rather than liability; and it is the contention of the appellee that unless and until the appellant can make a showing that he is required, by order or other directive of a competent court, to make specific payment to the cargo owners, there is no obligation on the part of the appellee and appellant has failed to state a cause of action gainst the appellee as the trial court found."

The appellee quotes a portion of the third paragraph of the syllabus in *In re Estate of Rogers*, 164 Kan. 492, 190 P. 2d 857, as authority for its position. Quoted in toto such paragraph of the syllabus holds:

"An ordinary indemnity *automobile* policy, *such as described in the opinion*, creates no liability of the insurer to the insured until the liability of the insured is established *by one of the methods stated in the policy. The rights of third parties against the insurer are no greater than the rights of the insured or than those of the insured's personal representative.*" (Emphasis supplied.)

It is to be noted that in its brief appellee does not quote the above emphasized portion of the syllabus. The language emphasized was the crux of the decision in the *Rogers* case and is determinative of the controversy in the case at bar. The policy under consideration in *Rogers* was one of ordinary automobile indemnity covering liability for personal injuries and damage to property resulting to others from the operation of the automobile. Such policy contained the following provision:

". . . Action against Company—Coverages A and B. No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company." (p. 494.)

We note further that the policy of insurance here involved does not contain the above quoted restriction. The distinction between automobile indemnity insurance and cargo liability insurance justifies the absence of the "no action" clause.

The liability of the owner of an automobile, for injuries resulting from its operation, is for common law negligence. Both the legal

liability and the amount of damage is dependent upon questions of fact usually disputed. The legal liability of a common carrier of cargo is more definitely determinable. Except as limited by the terms of the bill of lading the legal liability of a carrier is for all loss of goods intrusted to it for shipment, except those occasioned by act of God, a public enemy or the contributing negligence of the shipper. (*Watkins v. Railway Co.*, 82 Kan. 308, 108 Pac. 116.) Absent the interference of an act of God or a public enemy the legal liability of the appellant, a common carrier, for injury to the goods in transit was absolute and therefore determined.

The policy does provide how the amount of loss or damage will be determined. It further provides that the books and records will be kept by the assured in such a manner that the exact amount of loss or damage can be accurately determined; that no goods shall be valued, for loss or damage, in excess of the net cost to the shipper to replace them; and that if replacement cannot be effected the limit of liability shall be the invoice price to the consignee.

Moreover, the policy anticipates that claims for loss or damage would be adjusted without the legal liability being reduced to judgment. It specifically provides:

". . . All adjusted claims shall be paid or made good within thirty (30) days after presentation and acceptance of satisfactory proofs of interest and loss at the office of this Company. . . ."

The phrase "adjusted claim" carries a different connotation than the phrase "adjudicated claim." "Adjust" means "to settle; to free from differences or discrepancies; to bring to a satisfactory state. so that parties are agreed." "Adjudicate" means "to hear or try, and determine judicially; to settle by judicial decree." (Webster's New International Dictionary, Second Edition, Unabridged.)

The insurer contracted to pay "adjusted claims" not "adjudicated claims."

The words "legal liability" must be construed to encompass the contractual liability which appellant assumed on receipt of the cargo from the owner. (*Brooklyn Clothing Corp. v. Fidelity-Phenix F. Ins. Co.*, 205 N. Y. App. Div. 743, 200 N. Y. S. 208.)

In 29A Am. Jur., Insurance, § 1343, the rule is stated thus:

"The question has frequently arisen whether a contract of insurance protecting the insured against losses due to injuring the property or person of a third person is one of liability or indemnity. The general distinction between the two kinds of insurance is that if the policy is one against liability, the coverage thereunder attaches when the liability attaches, regardless of actual

loss at that time; but if the policy is one of indemnity only, an action against the insurer does not lie until an actual loss in the discharge of the liability is sustained by the insured. In general, the class into which a particular policy falls depends upon the intention of the parties, as evinced by the phraseology of the agreement in such respect in the policy. In accordance with the rule applicable to insurance contracts generally, if the provisions in such respect are ambiguous or uncertain, they will be construed in favor of the insured, but if the language is not susceptible of more than one construction, the courts cannot make another contract for the parties." (pp. 458, 459.)

The language in the policy is susceptible of but one construction. The word "indemnity" is not used in the policy and the policy covers "the legal liability of the assured as a carrier . . . for direct loss or damage" consisting principally of oil field equipment or supplies.

As has been previously stated such policy does not contain a "no action" clause. This brings us to another general rule announced in 29A Am. Jur., Insurance, § 1343, where the following statement appears:

"In the absence of or apart from such a 'no action' clause in the policy, an agreement to insure against 'liability' or 'liabilities,' or 'the legal liability' of the insured, is one against liabilty rather than actual loss. A contract whereby the insurer agrees to pay damages with which the insured may be legally charged or which he may be liable to pay, or a final judgment, is generally considered a contract of liability, rather than one to indemnify the insured against loss. . . ." (pp. 459, 460.)

The Supreme Court of Oklahoma clearly indicates its view on the foregoing subject by including in the opinion in *Tri-State Casualty Ins. Co. v. Stekoll*, 201 Okla. 548, 208 P. 2d 545, a quotation from one of its earlier decisions (*Curtis & Gartside Co. v. Aetna Life Ins. Co.*, 58 Okla. 470, 160 Pac. 465) which reads:

" 'Contracts to pay legal liability differ from contracts of indemnity, in this, that, upon the latter, action cannot be maintained and recovery had until the liability is discharged, while upon the former the right of action is complete when the liability attaches.' " (p. 553.)

See, also, *Zinc & Lead Co. v. Insurance Co.*, 152 Mo. App. 332, 133 S. W. 156; and *Globe & Rutgers Fire Ins. Co. v. United States*, 202 F. 2d 696.

The policy under consideration is one insuring against liability, rather than one of indemnity, and the coverage attaches when the liability attaches. A cause of action accrued to the insured when the insurer denied liability.

Appellee next suggests, in support of its demurrer, that because of the application of G. S. 1949, 66-1,128, now G. S. 1961 Supp.,

66-1,128, under which the insurer assumes full liability for loss or damage to cargo—

"It is the contention of the appellee that a studied interpretation of the rational of this decision [*Burks v. Aldridge,* 154 Kan. 731, 121 P. 2d 276] would indicate that the cargo owners and not the appellant would conceivably have a cause of action against the appellee under the factual situation here presented; but again the 'insured,' who is the appellant here, cannot be found to have a cause of action against the appellee until his liability to the cargo owner has been adjudicated or determined by the courts."

We need not consider the effect of the statute in this controversy. The cargo owner is not suing. The statute does not change the terms and conditions of the cargo insurance as between the carrier and the insurer. The provisions of the statute are for the benefit of the cargo owner, not the insurer. There are only two parties to the insurance contract—the appellant, the insured and the appellee, the insurer. All adjusted claims are to be made good to the insured within thirty days after presentation and acceptance of satisfactory proofs of interest and loss at the office of the company. Under the terms of the policy the insured was the only party that could bring the action in the absence of 66-1,128, *supra.*

It should also be pointed out that the amended petition alleges the insurer denied all liability. A contention made by appellee in its brief appears to support such allegation. It states:

"Appellant here makes only the bare allegation that he was required to 'negotiate' his legal liability with his cutsomers and appellee submits that appellant is contending that he has been required by the appellee to 'negotiate' a liability which by very definition is nonexistent."

Appellant's legal liability to the cargo owners was clearly existing under the allegations of the petition. When the appellee denied all liability, the appellant had no recourse but to adjust the damages he had caused and sue his insurer under the terms of the cargo insurance contract.

In *West v. Hartford Fire Ins. Co.,* 248 Iowa 993, 83 N. W. 2d 465, the court had under consideration an action by an insured trucker against his insurer for damage to cattle while being transported. It is there stated:

"We find no merit in defendant's contention that plaintiff was not the proper party to prosecute this action. The record discloses first of all that plaintiff's firm paid . . . the loss claimed, . . .

"We are also clear that as a party to the contract plaintiff was permitted to bring the action in his own name. . . ."

". . . one in whose name a contract is made for the benefit of another or the beneficiary of such contract may be a party plaintiff to enforce the contract. Plaintiff here occupies that position by the terms of the insurance policy as well as being the real party in interest, having paid the loss to the owner of the destroyed and damaged livestock." (p. 1001.)

The appellant is the party intended to be benefited under the terms of the original policy.

It would appear to be the very general rule that where an insurer disclaims liability on the ground of noncoverage, the insured may not only bring an action against the insurer, but that the insurer is bound by any reasonable compromise or settlement made by the insured.

In *Keating v. Universal Underwriters,* 133 Mont. 89, 320 P. 2d 351, it is stated:

". . . Further, the defendant having denied coverage under the policy, it is in no position to criticize the settlement negotiations effected by plaintiff unless the amount paid in settlement is excessive, . . ." (p. 100.)

See, also, *Southwestern Fire & Casualty Company v. Bendel* (Tex. Civ. App.) 321 S. W. 2d 183 (Headnote 3), which reads:

"Where automobile liability insurer refused to defend action against insured and refused to pay amount of settlement made by insured after such refusal to defend, insurer could not assert, when sued by insured, that there was no proof that a claim covered by the policy was made against insured and that there was no proof that the settlement was reasonable and necessary and that there was no proof that the attorney's fee incurred by insured was reasonable and necessary." (p. 184.)

For another pertinent decision see *Theodore v. Zurich General Accident & Liabil. Ins. Co.* (Alaska), 364 P. 2d 51.

Based on what has been previously stated and held we have no difficulty in concluding that under the cargo insurance contract the insured's right of action accrued when its liability attached and the insurer denied liability. It follows the trial court erred in sustaining the demurrer to the third amended petition. Therefore its action in that respect should be vacated and set aside and the cause remanded with directions to overrule the demurrer and proceed with the cause in accord with the views expressed in this opinion.

It is so ordered.