IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 6, 2002 Session

## CERTAIN UNDERWRITER'S AT LLOYD'S OF LONDON Subscribing to Policy of Insurance No. LTC982015 v. TRANSCARRIERS INC., ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. 305691-7 T.D.     Robert A. Lanier, Judge**

_____

**No. W2001-02556-COA-R9-CV - Filed September 16, 2002**

_____

This is an interlocutory appeal to determine when a cause of action accrued so as to trigger a contractual limitations period contained in a legal liability insurance policy issued to a motor carrier, where the contract contained a settlement of loss provision and the insurer never denied liability.  We hold the contractual statute of limitations began to run upon the expiration of the settlement of loss provision, when the insurer was no longer immune from suit.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

Alisa W. Terry, Decatur, Georgia, for the appellant, Certain Underwriter's at Lloyd's of London.

Joseph W. Barnwell, Jr., Memphis, Tennessee, for the appellee, Transcarriers, Inc.

Tim W. Hellen, Memphis, Tennessee, for the appellee, Mitsui Marine & Fire Insurance Company of America.

### OPINION

Certain Underwriters at Lloyd's of London ("Certain Underwriters") issued a policy of insurance to Transcarriers, Inc., effective February 15, 1998, through February 15, 1999.  The policy containing the following provisions:

INSURING AGREEMENT:

1.  This Policy covers the legal liability of the Insured as a motor carrier, as such liability is defined, limited and set forth in the Uniform Bill of Lading, for direct physical loss or damage to shipments of lawful goods or wares, and only while in the 48 Contiguous States of the United States, the District of Columbia, Puerto Rico and Canada.

. . . .

CONDITIONS:

. . . .

3.  NOTICE OF LOSS.  The Insured shall as soon as practicable report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim under this Certificate and shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

. . . .

7.  SUIT.  No suit, action or proceeding for the recovery of any claim under this Certificate shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim provided, however, that if by the laws of the State within which this Certificate is issued such limitation is invalid, then any such claims shall be void unless action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

. . . .

17. SETTLEMENT OF LOSS.  All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company.  No loss shall be paid or made good if the Insured has collected the same from others.

On March 3, 1998, and June 1, 1998, Transcarriers reported two losses of cargo, which allegedly were stolen in transit, to Certain Underwriters.  These claims were neither paid nor denied by Certain Underwriters.  Certain Underwriters contends in its brief to this Court that it forwarded

a reservation of rights letter to Transcarriers on or about June 26, 1998, indicating that it might limit or deny coverage, but cites nothing in the record to support this contention. Transcarriers denies that such a letter was forwarded and states that there is no such letter in the record. Transcarriers further asserts that Certain Underwriters never indicated that Transcarriers' claims were questionable or that they would not be paid, and that Certain Underwriters indicated that it was still investigating the matter as of October 14, 1999. In November of 1999, Certain Underwriters brought a declaratory judgment action seeking to determine whether it was required to provide insurance coverage for the claims. In June of 2000, Transcarriers filed a counter-complaint alleging, *inter alia*, breach of contract and breach of implied covenant of good faith and fair dealing. In its counter-complaint, Transcarriers alleged damages resulting from suit brought against it by the shipper. Transcarriers further alleged that had Certain Underwriters denied the claim in a timely manner, it would have made a claim for losses due to employee dishonesty pursuant to its policy with United States Fidelity & Guaranty Company. The counter-complaint was dismissed insofar as Transcarriers sought consequential damages resulting from a suit brought against it by the shipper.

On December 28, Certain Underwriters filed a motion for summary judgment asserting that, pursuant to condition number 7 of the insurance contract, *supra*, Transcarriers' suit was time-barred by the contractual 12-month limitations period. In March of 2001, the trial court granted Certain Underwriters' motion for summary judgment based on the 12-month limitation period. Transcarriers filed a motion to amend the judgment and the trial court reversed itself and denied Certain Underwriters' motion on May 25, 2001. The trial court based its decision on a conclusion that, as a matter of law, the limitations period contained in the policy began to run upon denial of the claim by Certain Underwriters. Since the claim had not been denied, the court found that the 12-month limitations period had not been triggered.

Certain Underwriters moved for permission to appeal the trial court's order by interlocutory appeal. The trial court granted this motion on October 10, 2001. Permission to appeal was granted by this Court on December 13, 2001.

### *Issues*

The issue now before this Court is whether the 12-month limitations period provision contained in the insurance policy bars Transcarriers' counter-claim against Certain Underwriters. Certain Underwriters contends that the limitations period began to run upon expiration of the 60 day "Settlement of Loss" provision, and that Transcarriers' action accordingly is barred. Transcarriers submits that the limitations period could only have been triggered by denial of its claim, and that its cause of action has therefore not expired.

### *Standard of Review*

The issue before this Court is an issue of law. Our standard of review on issues of law is *de novo*, with no presumption of correctness afforded to the conclusions of the court below. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

## *Discussion*

We begin by noting that a policy for insurance is generally reviewed under contract principles. As long as its terms are unambiguous, it will be enforced as written. Ambiguous terms generally will be construed against the drafter. *See Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). However, the courts will not rewrite an unambiguous term simply to avoid harsh results. *Shamrock Homebuilders, Inc. v. Cherokee Ins. Co.*, 466 S.W.2d 204, 206 (Tenn. 1971). It is undisputed that a contractually agreed limitations period in an insurance policy is valid and enforceable in Tennessee. *See, e.g., Guthrie v. Connecticut Indem. Ass'n*, 49 S.W. 829, 830 (Tenn. 1898); *Hill v. Home Ins. Co.*, 125 S.W.2d 189, 192 (Tenn. Ct. App. 1938).

The courts of this state generally have held that a contractual limitations period begins to run upon accrual of the cause of action. *Phoenix Ins. Co. v. Fidelity & Deposit Co.*, 37 S.W.2d 119 (Tenn. 1931); *Federal Sav. & Loan Ins. Corp. v. Aetna Cas. & Sur. Co.*, 701 F.Supp. 1357, 1362 (E.D. Tenn. 1988). We have interpreted insurance policies containing language requiring a claim to be brought within so many days after a property loss, but which protect the insurer from suit until after a settlement period, as meaning that suit must be brought within so many days after the cause of action accrues. *Boston Marine Ins. Co. v. Scales*, 49 S.W. 743, 747 (Tenn. 1898). Since the settlement period provides a period of immunity during which the insured may not bring suit, the cause of action has been construed as accruing once the immunity period has expired, rather than on the date of the actual loss. *Id.* Denial of the claim by the insurer before expiration of the settlement of loss period, however, effectively is a waiver of the immunity period. *Home Ins. Co. v. Hancock*, 62 S.W. 145, (Tenn. 1900). An insurer thus cannot raise the immunity period as a defense to a suit brought within that period once it has denied the claim. *Hill*, 125 S.W.2d at 192. Thus an insured's cause of action accrues upon denial of liability by the insurance company when that denial comes within the immunity period. *Id.* It follows that if the insured's claim is not denied within the settlement of loss period, during which the insurer is immune from suit, his cause of action accrues upon expiration of the settlement of loss period, when the insurer is no longer immune from suit.

In holding that a cause of action accrues upon denial**,** the courts did not alter the contractual limitations period or rewrite the contract so that denial is required before an insured may bring an action against the insurer. To require denial of a claim before a cause action could accrue would permit the insurer to merely sit on a claim and do nothing. Rather, such cases have recognized that it is inequitable for the insurer to effectively shorten the period in which a cause of action could be maintained by granting itself a period in which it is immune from suit while the limitations period is slipping away. *Boston Marine*, 49 S.W. at 747. The immunity period therefore postpones the accrual of the insured's action. *Hill*, 125 S.W.2d at 192. Once the action has accrued, the limitations period begins to run. If an insurer neither pays nor denies a claim brought by its insured,

-4-

a suit against the insurer may be sustained upon expiration of the settlement of loss/immunity period. *Id.* Accordingly, the contractual statute of limitations begins to run upon denial of liability or upon expiration of the immunity period, whichever comes first.

Transcarriers alleges that in addition to not denying its claim, Certain Underwriters stated that it was continuing its investigation of the claim and that it never indicated that the claim might be denied. Even if we consider these allegations to be true, they do not alter when Transcarriers' action accrued. However, like other contract provisions, the term limiting the time within which an action may be brought can be waived by the insurer. *Das v. State Farm Fire & Cas. Co.*, 713 S.W.2d 318, 323 (Tenn. Ct. App. 1986). The insurer may also be estopped from asserting the limitations period as a defense where it has mislead the insured into believing its claim will be paid, thereby lulling the insured into inaction, or where the insurer intentionally delayed adjustment of the claim until after the limitations period had expired. *Id.* Whether Certain Underwriters should be estopped from asserting the limitations period in this case requires findings of fact by the trial court and is not an issue now before this Court.

Transcarriers further contends that since the insurance contract at issue here is a legal liability policy, its cause of action against Certain Underwriters could not accrue until an adverse judgment had been rendered against it. In general,

> a cargo policy covering the legal liability of the insured as a carrier for the direct loss or damage on a shipment of goods and providing that no suit or action on the policy shall be sustainable unless commenced within 12 months next after the happening of the loss is an agreement to indemnify in case of legal liability against the insured, and a suit brought within 12 months after the rendering of a judgment against the insured is not barred by the provision. To hold that the happening of the loss relates to the physical damage to the cargo would inject into the policy a new meaning and change from one of indemnity for liability to insurance for any physical damage to the cargo.

17 Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE § 236:17 (3d ed. 2000). Transcarriers argues that it had not been damaged, and therefore could not maintain an action against Certain Underwriters, until the shipper had obtained a judgment against it for losses to the shipper of its property. Certain Underwriters maintains that since liability of the carrier is presumed when goods are lost by a carrier, a judgment is not a necessary prerequisite to the determination of legal liability.[1]

---

[1]49 U.S.C.S. § 14706 provides:

**(a) General liability.** (1) Motor carriers and freight forwarders. A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 [49 U.S.C.S. §§ 13501 et seq. or § 13531] shall issue a receipt or bill of lading for property it receives for transportation under this part [49 U.S.C.S. §§ 13101 et seq.]. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 [49 U.S.C.S. §§ 13501 et seq. or § 13531 or §§ 10501 et seq.] are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the

(continued...)

Additionally, we note that the policy itself refers to *adjusted* rather than *adjudicated* losses. Therefore, an adverse judgment against Transcarriers was not required before payment could be made on the policy. Unlike most legal liability issues, the amount of Transcarriers' liability for lost cargo is easily determined notwithstanding the absence of a judgment against it.

In ***Waugh v. American Casualty Co.***, 378 P.2d 170 (Kan. 1963), the Supreme Court of Kansas addressed whether a cause of action accrued upon the denial of a claim brought pursuant to a similar policy, where no judgment had yet been rendered against the carrier. The court held that although no judgment had been rendered against the carrier, it could maintain a cause of action against the insurer where the insurer had denied its claim. The ***Waugh*** court analyzed the particularities of a similar policy insuring a motor carrier against liability for the loss of goods, and distinguished a policy which covers adjusted claims as opposed to adjudicated claims. While not binding on this Court, we believe the reasoning in ***Waugh*** to be applicable here.

The issue addressed by the court in ***Waugh*** was not whether denial of liability by the insurer was necessary to trigger the limitations period. Rather, the ***Waugh*** court addressed whether the insured motor carrier could bring an action against the insurer which had denied its claim on a liability insurance policy, where the motor carrier's liability had not been adjudicated. The court noted that, as here, the policy provided for payment of adjusted rather than adjudicated claims. ***Waugh***, 378 P.2d at 175. Such a policy, the court reasoned, "anticipates that claims for loss or damage would be adjusted without the legal liability being reduced to judgment." ***Id.*** The court noted that the term "'legal liability' must be construed to encompass the contractual liability which [the carrier] assumed on receipt of the cargo from the owner." ***Id.*** (citing ***Brooklyn Clothing Corp. v. Fidelity-Phenix F. Ins. Co.***, 205 N.Y. App. Div. 743, 200 N.Y.S. 208). When a policy is one against liability, coverage under it attaches when liability attaches. ***Id.*** As noted above, the motor carrier's liability for losses of a shipper's goods in the possession of the carrier attaches at the time of loss. To hold that the insured's cause of action on a liability policy covering a motor carrier could accrue only upon the entry of an adverse judgment against it would result in unnecessary, costly, and time consuming litigation. To require such litigation where the amount of the carrier's liability is determinable without resort to the courts for intensive fact finding, and where the carrier's liability is not disputed, would result in a waste of judicial and economic resources. Further, it defeats the intent of the parties to this insurance contract, which was to settle *adjusted* claims quickly without resort to the courts to adjudicate the amount of liability. This is the coverage for which the insured paid, and which the insurer promised to provide.

---

[1](...continued)

actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

In short, had Certain Underwriters denied Transcarriers' claim, Transcarriers would have had a cause of action against it notwithstanding the absence of a law suit brought against it by the shipper. The insurance policy clearly contemplates coverage for adjusted claims; it does not require that claims be adjudicated. Coverage under Transcarriers' liability policy attached when Transcarriers' liability attached. Transcarriers' liability attached when the shipper's property was lost. The insurance policy, however, anticipates a period during which proof of loss must be made and provides the insurer with a 60-day settlement of loss period. Thus the accrual of Transcarriers' action against Certain Underwriters was postponed until the expiration of the settlement of loss period, when its claim became payable. The 12-month limitations period for an action by Transcarriers against Certain Underwriters began to run upon accrual, *i.e.*, at the end of settlement of loss period.

## *Conclusion*

Although the insurance policy in this case was one for legal liability, it clearly anticipated coverage of adjusted rather than adjudicated claims. The intent of the parties reflected by this policy is that claims would be paid without resort to an adverse judgment against Transcarriers in a suit brought by the shipper. This intent may be inferred from the language of the policy itself. Moreover, the policy is one for coverage of Transcarriers' liability for loss. Coverage under the policy therefore attached when Transcarriers' liability attached. Transcarriers' liability attached at the time of the loss. The amount of loss for which Transcarriers is insured is to be adjusted by the parties without a prerequisite adjudication in an action by the shipper against Transcarriers. This reflects the practical and economic realities of the motor carrier industry, which presumes liability of the carrier, and where the amount of loss is easily determinable without intensive fact finding by the courts.

The contractual limitations period in a contract of insurance begins to run when the insured's cause of action accrues. Notwithstanding language in the policy that the cause of action must be brought within so many months of occurrence of the loss, a settlement of loss period which gives the insurance carrier so many days in which to settle the claim, thereby rendering the insurer immune from suit, postpones accrual of the insured's action until the expiration of the settlement of loss period. Denial of the claim by the insurer results in a waiver of the settlement of loss period, and thus the insured's cause of action accrues upon denial. When the insurer neither pays nor denies a claim within the settlement of loss period, it is no longer immune from suit and the insured's cause of action accrues. Thus the limitations period is triggered either by denial of the claim by the insurer or by expiration of the settlement of loss period, whichever comes first.

Judgment of the trial court holding that denial of Transcarriers' claim by Certain Underwriters was necessary to trigger the limitations period is reversed. This case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellee, Transcarriers, Inc.

_____
DAVID R. FARMER, JUDGE