NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0394n.06

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DARK HORSE EXPRESS, LLC,

    Plaintiff-Appellant,

v.

LANCER INSURANCE COMPANY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Aug 06, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

Before: KEITH, ROGERS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Dark Horse, a trucking company, held an insurance policy with Lancer. That policy required Lancer to pay any amount that Dark Horse "legally must pay" for loss to a customer's cargo. Lancer argues, and the district court held, that this clause referred only to payments mandated by court judgments, rather than by other legally binding documents like contracts. We respectfully disagree and reverse.

In 2014, Dark Horse contracted to transport goods for the Performance Food Group. Performance then bought about $250,000 worth of meat from a vendor in Dallas, and a Dark Horse driver picked up the load for delivery to Performance. Along the way, he stopped for a liaison at a motel; when he woke up, his truck was gone.

The next day, Dark Horse located the truck with GPS and finished the delivery. When the load arrived, Performance found that about $30,000 of the meat was missing and that the trailer's security seal was broken. The transportation contract gave Performance the right to refuse goods

for "[a]ny unexplained break in the chain of custody" and for any "broken seals." Performance rejected the entire load.

Lancer eventually resold the meat for about $50,000 and gave the money to Performance. Performance demanded payment for the remaining cost of the meat (about $200,000) from Dark Horse, which in turn demanded that Lancer pay that amount. When Lancer refused, Dark Horse paid Performance itself. Dark Horse then sued Lancer, alleging among other things that Lancer had breached the terms of Dark Horse's insurance policy. The district court granted summary judgment to Lancer, finding that the policy required coverage only for payments mandated by a court judgment—which Performance never sought against Dark Horse here. We review the court's decision de novo. *See Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018).

The policy provided four types of coverage: Covered Autos Liability, for damage caused by Dark Horse trucks; Physical Damage, for damage to Dark Horse trucks; Trailer Interchange, for damage to trailers; and Cargo Insurance, the section at issue here. That section required Lancer to "pay all sums" that Dark Horse "legally must pay as a motor carrier for 'loss' to Cargo while in [Dark Horse's] custody or control in the ordinary course of transit." The question here is whether the phrase "legally must pay" included payments mandated by sources other than court judgments, namely the transportation contract between Dark Horse and Performance.

The parties agree that Tennessee law governs the policy's terms. Under Tennessee law, we give those terms their plain meaning. *See Alcazar v. Hayes*, 982 S.W.2d 845, 848 (Tenn. 1998). The term "must" signifies an obligation. *See, e.g.*, Webster's Third New International Dictionary 1492 (2002) (defining "must" as "required by law, custom, or moral conscience to" take an act). Obligations can arise in the legal sense from contracts as well as judgments, since a contract is a promise that "the law in some way recognizes as a duty." Restatement (Second) of Contracts § 1

(1981). Indeed, contracts exist to create legal obligations, and thus to save parties the expense of reducing every dispute to a court judgment. And when parties go to court, presumably the court simply enforces the contract. Thus, as a matter of ordinary English, one would say that a party who breaches a contract is obligated—not only morally, but legally—to make the other party whole. Accordingly, the phrase "legally must pay" included Dark Horse's payment obligations under contracts as well as under judgments. *See Certain Underwriter's at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496, 501 (Tenn. Ct. App. 2002).

Lancer makes several arguments to the contrary. It argues first that, under some other insurance policies, courts have found judgments to be necessary for coverage. "But we do not construe contractual provisions in gross. Instead we interpret each contract individually, according to its terms." *Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013) (internal quotation marks and citation omitted). That other courts reached different results under different insurance contracts matters little here.

Second, Lancer tries to rely upon two provisions that apply to the Covered Autos Liability section of the policy, rather than to the Cargo Insurance section. But this case is about Cargo Insurance, not Covered Autos, and by the policy's plain terms those two sections are separate. Hence this argument is meritless.

Third, Lancer argues that, by paying Performance without a judgment, Dark Horse undermined Lancer's right to "defend" Dark Horse against suit. But Performance never sued Dark Horse, so that right never accrued. Finally, Lancer noted at oral argument that the policy excluded coverage for payments made without Lancer's consent. But Lancer failed to develop that argument in its brief on appeal, so that argument is waived. *See Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 376 (6th Cir. 1999).

Lancer also disputes the extent to which, under the transportation contract, Dark Horse was in fact obligated to pay Performance for the rejected meat. But the district court can resolve that issue on remand. For present purposes it suffices to say that Lancer must pay under the insurance policy whatever Dark Horse must pay under the transportation contract.

The district court's judgment is reversed, and the case remanded for further proceedings consistent with this opinion.