**Robert E. NIX, Plaintiff-Appellant,**

v.

**SENTRY INSURANCE,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

July 26, 1983.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 31, 1983.

Glen R. Claiborne and David L. Buuck, Knoxville, for plaintiff-appellant.

W. Kyle Carpenter, Knoxville, Clayton H. Farnham, Atlanta, Ga., for defendant-appellee.

NEARN, Presiding Judge, Western Section.

In October, 1979, the home of the plaintiff Robert E. Nix was destroyed by fire. The defendant insurer refused to pay for the loss and this suit by Nix was the result of that failure. The insurer defended the suit on the grounds of arson and material misrepresentation. The Trial Judge held that the proof failed to show that plaintiff was guilty of arson but found that plaintiff had made material misrepresentations concerning the insurance and accordingly dismissed the complaint.

Plaintiff appeals and insists that the evidence preponderates against the finding of the Trial Judge regarding alleged misstatements concerning the insurance. The defendant appellee argues that the evidence preponderates in favor of the Trial Judge's finding regarding misstatements, but in the

event it does not, the evidence preponderates in favor of a finding of arson contrary to the finding of the Trial Judge on that issue.

This Court is required to give the Trial Judge's factual determinations a presumption of correctness unless rebutted by the preponderance of the evidence. T.R.A.P. 13(d)

■ First, we concur in the finding of the Trial Judge that the evidence will not support a finding that the plaintiff was guilty of arson. At the time of trial, plaintiff had, so to speak, "taken the pledge"; however, before and at the time of the fire, plaintiff had a serious drinking problem. Plaintiff began the day of the fire with a breakfast consisting of a half-pint of alcoholic refreshment and spent the remainder of the daylight hours enjoying fellowship and imbibing at certain establishments, which establishments the Court is reliably informed are generally referred to in Tennessee by their patrons as "beer joints." About sundown while so occupied, plaintiff was advised that his house was on fire. Believing that his companions surely jested or perhaps that it was a guise by the proprietor to get him to leave the premises, he continued to enjoy himself. Then, someone convinced him his house had burned and he was driven by the premises and was advised by a bystander that "detectives" were looking for him. Thereupon, he immediately returned to his favorite beer joint to seek solace in the suds, as past experiences had given him an aversion to police authority. Later on his sister arrived and also advised him that his house had burned and that he had better come to her house to sleep for the night. With the aid of a six-pack of beer, he was coaxed to go to his sister's home for the night. We bring these matters out not to "poke fun" at the plaintiff but to show the extent of his problems. This addiction to drink was readily admitted by plaintiff and in fact was used to account for some of the discrepancies in his statements made at various times regarding the fire. Asked if he was drunk at the time he gave a particular pre-trial deposition, plaintiff responded: "If I was alive, I was drunk." Also, it appears that on another occasion when giving a statement, he was actively drinking at the time and offered his inquisitors a drink. To say the least, he appears to have been in a most jovial mood at practically all times.

The proof adduced by the defendants in an attempt to show arson consisted primarily of "motive" proof, that is, proof regarding plaintiff's alleged precarious financial condition and conflicting testimony regarding who plaintiff owed money to and whether plaintiff was current or delinquent on his payments.

Also, the defendant attempted to show that the fire was intentionally set. The proof may even preponderate in favor of a finding that the fire was intentionally set, but it certainly does not preponderate in favor of a finding that plaintiff set the fire or that anyone acting for him set the fire. The undisputed proof does show that when the fire department arrived they found a trial of coins leading from the house to a field. Plaintiff kept a large supply of coins in his residence and it is not at all beyond the realm of possibility that someone had broken into the home, stolen other items as well as the coins and left a trail in their haste after setting fire to the premises. Plaintiff had a boat, motor and a gas supply therefor in his carport at the time of the fire.

Again, we concur that the proof will not sustain a finding of arson.

The insurance policy contains the following provision:

[t]his entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in the case of any fraud or false swearing by the insured relating thereto.

It should be noted that we are not here dealing with an alleged materially false statement made in an *application* for insurance. Such a statement would void the

policy *ab initio*. *Brewer vs. Mid-West National Life Insurance Company of Tennessee*, (1979 M.S.Tenn.App.) 605 S.W.2d 232. We are here dealing with allegedly false statements or false swearings made subsequent to the issuance of the policy and in connection with a loss. In *Boston Marine Insurance Company vs. Scales*, (1899) 101 Tenn. 629, the Tennessee Supreme Court had before it an insurance policy with similar provision as in this case. The insurer defended on the basis of an alleged false proof of loss as an avoidance of the policy. The Court held that in order to void the policy any false statements in a proof of loss must be willfully false in some material matter and made with intent to deceive. The Court also observed:

> When the false swearing is in the application it forms the basis upon which the contract rests, and if fraud enters into it the policy would be voided even though the policy does not so provide. But after the loss occurs then voiding the policy is in the nature of a penalty or forfeiture; in other words, in such cases the holding is virtually that, although the insured has had a loss, and may be entitled to recover from it, yet, as he has been guilty of fraud in the proofs, he must have his policy vacated and set aside as a punishment for such fraud, or attempted fraud. In the latter case, as in all cases of forfeiture, a strict construction should be adopted, and the forfeiture not enforced except on the plainest grounds, *if at all.* (emphasis ours)

In this case the Trial Judge was not explicit in his findings regarding the alleged false statements concerning the insurance which would void the policy. Rather, he stated:

> But on item six you lose. On item six, a question involved the Court very much during the course of this trial. "Further answering the entire complaint, it avers that the plaintiff's contract of insurance with it is void by reason of the plaintiff having intentionally concealed and misrepresented material facts and circumstances relating to this insurance. Exhibit One of the policy says specifically,

the entire policy shall be void whether before or after a loss,"—it makes no difference,—"the insured has wilfully concealed or misrepresented any material fact or circumstances concerning this insurance, or the subject thereof, or the interest of the insured," through line 5, page 2 of Exhibit One there.

> I believe reasonable, natural inferences, Mr. Claiborne, is, and the record is replete with it, two days we have heard where the plaintiff said one thing, and said another thing. I don't have to go back and itemize it because the record is full of it, and if it is typed up it will show. And the answer was, "Well, if I was alive, I was drinking," in effect. In other words, "I was drinking." The inference is, "I didn't know what I was doing or saying. At one time or other I said it jokingly, or I said it half seriously, or I don't know what I said, nor if I said it." That won't do.

> Witness after witness has said the gentleman appeared to know and understand the questions, whether he was laughing, or joking, or drinking, or otherwise, and appeared to answer them straightforwardly, on balance; not each and every question, but on balance, as a whole. I find a material misrepresentation, voiding the policy, and hold for the defendant.

■ Neither does counsel for appellee state with any degree of specificity in his brief the alleged falsities which act as a forfeiture. The brief concentrates more on discrepancies in plaintiff's testimony regarding his financial condition rather than false statements in the proof of loss. These alleged discrepancies would be material to the issue of arson. Whether or not Nix was liquid and solvent has nothing to do with what was actually lost in the fire. We hold that if rights are to be forfeited under the terms of this insurance policy, the concealment or misrepresentation made must be relative to the loss claimed.

Therefore, we have examined the record in an effort to ascertain where therein

there is found proof of material misrepresentations in the proof of loss.

■ After the fire plaintiff was asked by the insurer to list the contents of his home that were destroyed in the fire. This listing comprises the proof of loss. From the record we are able to find only three items or areas which were seriously questioned. The first is in regard to some cash bills. The plaintiff listed some cash money that was in his overalls in the closet at the time of the fire. The insurer produced two witnesses who testified that an examination of the closet showed no evidence of a roll of bills having been there. There is also proof from the plaintiff that scavengers were on the premises immediately after the fire. It is interesting to note that each of the insurer's witnesses testified that when they separately and independently examined the closet it bore no signs of anyone having been in it subsequent to the fire and prior to their separate examination. Aside from the fact that from their own testimony at least one of them had to be in error, such matter is immaterial. It is admitted that money lost by fire is not covered under the terms of the policy.

■ The second item is the matter of $480.00 listed as the value of steaks in the freezer. The insurer produced testimony that no meat residue was in the freezer the day after the fire. The plaintiff testified that he did brick work for a packing house and they supplied him with a supply of meat as payment. Again, plaintiff adduced proof of scavengers on the premises and the coin trail which was evidence of a burglary. With these facts we cannot convict plaintiff of a fraud and say that he willfully misrepresented the claim for meat.

■ The third item is a boat and trailer. The plaintiff listed its value at $11,000.00. There is no proof that it was not worth that much prior to the fire. After the fire plaintiff sold it for salvage for $700.00 without prior approval of the insurer. The insurer seems to intimate that the plaintiff committed fraud by not listing the value of the boat and trailer at $10,300.00. There is absolutely no merit to this contention. The pages of items listed by the plaintiff all give their values prior to the fire. The insured was never asked or expected to list values after the fire. There is nothing false about the statement given by the insured.

Of course when settlement is made the insurer would be entitled to take credit for the salvage value, but simply because an item has a salvage value does not alter its value *prior* to the fire.

We are of the opinion that the Trial Judge erred in finding that there had been a material misrepresentation regarding the loss. It appears to us that the Trial Judge allowed the conflicting testimony of plaintiff on the arson issue to apply to the proof of loss issue. Once it was determined there was no arson, the policy could only be avoided by material false statements in relation to the proof of loss. We find the evidence fails to establish on the "plainest grounds" that a fraud has been committed and the policy rights forfeited.

Accordingly, the judgment of the Trial Court must be reversed.

Since the Trial Judge found for the defendant, there has never been a determination of the value of the goods destroyed and the insurer does not admit that given by the plaintiff is correct. Therefore, the cause is remanded for a determination of the value of the items lost covered under the policy and judgment is to be entered for the amount as found.

Costs of appeal are adjudged against the appellee.

Done at Knoxville in the two hundred and seventh year of our Independence and in the one hundred and eighty-eighty year of our Statehood.

TOMLIN and CRAWFORD, JJ., concur.