# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 6, 2004 Session

## DENISE WASSOM v. STATE FARM MUTUAL
## AUTOMOBILE INSURANCE CO.

**Appeal from the Law Court for Sullivan County**
**No. C35276     Richard E. Ladd, Judge**

**No. E2004-00098-COA-R3-CV - FILED FEBRUARY 24, 2005**

Denise Wassom ("Plaintiff") loaned her car to her ex-boyfriend who then had a single-car accident while making a beer run. Plaintiff's vehicle was a total loss. Fearing that her ex-boyfriend might be arrested for DUI, Plaintiff reported to the police that her car had been stolen. Plaintiff's vehicle was insured through State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiff also reported to State Farm that her car had been stolen. Approximately two weeks into State Farm's investigation, an adjustor for State Farm interviewed the witnesses whom Plaintiff claimed to have been with at the time her vehicle was stolen. Immediately after these interviews, Plaintiff "came clean" and told State Farm the truth. State Farm denied Plaintiff's claim and Plaintiff filed suit claiming State Farm was in breach of contract. State Farm filed a motion for summary judgment claiming the undisputed material facts demonstrated that Plaintiff had made material misrepresentations with the intent to deceive. The Trial Court granted State Farm's motion for summary judgment, and Plaintiff appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Law Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and SHARON G. LEE, JJ., joined.

George Todd East, Kingsport, Tennessee, for the Appellant Denise Wassom.

Leslie T. Ridings, Kingsport, Tennessee, for the Appellee State Farm Mutual Automobile Insurance Company.

# OPINION

## Background

Plaintiff was insured through an automobile insurance policy issued by State Farm. After Plaintiff's vehicle was totaled in a single-car accident and State Farm refused to pay her claim, Plaintiff filed this suit claiming State Farm had breached the insurance contract. The issues on appeal concern whether Plaintiff's admitted post-loss misrepresentations were such that State Farm could refuse to pay Plaintiff's claim.

The underlying facts in this case are not in dispute. On the evening of February 27, 2002, Plaintiff was at her house with her ex-boyfriend, Michael Perry ("Perry"). Kenny Stanley and Nicole Stanley were also at her house. Plaintiff loaned Perry her car keys, and Perry and Kenny Stanley left to go buy some beer. Perry had a single-car accident while on the beer run. According to Plaintiff, when Perry and Stanley returned to her house "[w]e all went inside and they come up with the story, which I went along with it, of calling the police and reporting it stolen." Plaintiff testified in her deposition that she went along with the "story" because she was afraid Perry would get into trouble because "[h]e had mentioned maybe getting a DUI." Perry and the Stanleys left Plaintiff's residence shortly after Plaintiff called the police and reported her vehicle stolen.[1]

Plaintiff also reported to Mike Cappell ("Cappell"), an insurance adjustor for State Farm, that her car had been stolen. Plaintiff told Cappell that on the evening in question, she left her house and was with Perry and the Stanleys. Her story to Cappell was that while she was away from her house, someone broke into the house, took only her car keys, and then stole her car. Cappell specifically asked Plaintiff if she had loaned her car to a friend and she responded that she had not. Plaintiff also denied knowing the identity of who was driving her car when it was wrecked.

Based on Plaintiff's report that her car had been stolen, State Farm provided Plaintiff with an "Affidavit of Vehicle Theft," which she completed and returned to State Farm. The affidavit was signed by Plaintiff under oath and notarized. In the affidavit Plaintiff stuck to her "story" that the car had been stolen, stating that the last time she saw her vehicle was when she left her house at 7:30 p.m. on February 27th. Plaintiff added that she was with Perry and the Stanleys until she returned home around 2:30 a.m., at which time she discovered her car keys and vehicle were gone.

Don Beedle ("Beedle") is an adjuster with State Farm who handles fire and theft claims. Because Plaintiff's claim involved a theft, the claim was transferred from Cappell to Beedle. Beedle interviewed Plaintiff about her claim, and she told him the same version of events that she had told Cappell. Beedle also informed Plaintiff that he needed to interview Perry and the Stanleys.

---

[1] It is a Class D felony to "[i]nitiate a report or statement to a law enforcement officer concerning an offense or incident within the officer's concern knowing that … the offense or incident reported did not occur … [or] the information relating to the offense reported is false…." *See* Tenn. Code Ann. §§ 39-16-502(a)(1) and (b)(1). A Class D felony is punishable with imprisonment of not less than two (2) years nor more than twelve (12) years. A fine not to exceed five thousand dollars ($5,000) may also be imposed. *See* Tenn. Code Ann. § 40-35-111(b)(4).

Unfortunately, neither Perry nor the Stanleys had telephones so Beedle mailed them letters saying that he needed to meet with them to discuss Plaintiff's claim. Beedle never received any response and re-sent the letters via certified mail. After a couple of days had passed and Beedle had not received the return receipts for the certified letters, Plaintiff told Beedle that Perry and the Stanleys were not going to pick up the certified letters. Then one morning, "[o]ut of the blue" Beedle received a telephone call at 8:30 a.m. from Nicole Stanley stating she, her husband, and Perry "we're ready to talk to you now." They agreed to meet with Beedle that morning at 9:00 a.m. According to Beedle:

> About 10 minutes later Ms. Wassom called me and said, "Don, I've been trying to get ahold … of the Stanleys and this Perry fellow. They're just not going to cooperate. They don't want to get involved and they're not going to work with you and they're not going to help me on this." … I said, "Denise, would you believe that I just hung up the phone with Ms. Stanley and they are on their way out here right now and they will be here … [in about] five to 10 minutes." And there was a long pause and she went, "Oh, okay. All right. Good. Well, then never mind," and hung up.

> Five or 10 minutes passed and sure enough, they were standing out in the lobby, the Stanleys. Right on time.… And I sat down and interviewed them and I interviewed Perry. And as I was walking one of the two out because I did it individually, into my lobby, I saw Denise come in the front door. And I could tell something was going on.… I could just tell that those two women – they were giving each other some funny looks and I got a sense that something was not – not right here.

> So I interviewed the Stanleys, interviewed Perry[2] and dismissed them and gave them my card, shook their hand and sent them down the road. And Denise said, "I need to speak to you now. There's something I've got to tell you." And I – I just knew what was coming. And we went back to my conference room … and she said, "Look, I misled you. I did not tell you the truth," and then she proceeded to tell me what happened which was that she had given Michael Perry permission to drive her car, he'd wrecked it and he'd been drinking and they were trying to protect him from getting a DUI arrest and the rest kind of unfolded from there.

---

[2] The time frames provided by the Stanleys and Perry did not corroborate Plaintiff's version of events on the evening her car was stolen.

-3-

At her pre-trial deposition Plaintiff acknowledged affirmatively misrepresenting that her car had been stolen, that she had not loaned her car to a friend, that she did not know who was driving the car when it was wrecked, etc. Plaintiff admitted she knew that she was under oath when she provided the false information in her affidavit. Plaintiff further acknowledged that the "Affidavit of Vehicle Theft" specifically stated that it was "a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties … [include] imprisonment, fines, and denial of insurance benefits." After reporting the vehicle stolen, Plaintiff also signed a document titled "Consent to Move and Examine Property," when she still was claiming her vehicle had been stolen. This document also contained the above warning to the effect that it was a crime to provide false information to an insurance company, and even though Plaintiff read this warning, she nevertheless proceeded to sign the document.[3]

Beedle testified in his deposition that Plaintiff's reporting that the vehicle had been stolen affected the course of State Farm's investigation. According to Beedle:

> If Ms. Wassom would have presented the facts as they actually occurred, we would have interviewed Mr. Perry to confirm that. We would have seen if there were any specific injuries, if we had any additional exposures.… [W]e had the potential for property damage, liability. We had the exposure for bodily injury exposure and we had medical payments exposure if there was any injuries.
>
> Normally when a vehicle's rendered a total loss and flipped on its roof … you're probably going to have some injuries somewhere or potentially some – another vehicle's been hit, some fixed property, mailbox, trees, fences. You just never know. So that would have been investigated ….

Beedle then added that because the loss was reported as a theft, "all that [potential increased exposure] … was not there." In other words, had the truth been reported, State Farm "would have been investigating the exposures for our potential liability issues for fixed property, medical issues, medical liability … we stood a large – much larger increase of exposure there." It is also worth noting that if the vehicle had been damaged after being stolen, State Farm would have had a subrogation claim against the thief to the extent of any payments made by State Farm to Plaintiff.

Beedle further testified that State Farm provided Plaintiff with a rental car immediately after the accident. Beedle stated that, according to the policy, "[i]f the loss was

---

[3] Tenn. Code Ann. § 39-14-133 provides that "[a]ny person who intentionally presents or causes to be presented a false or fraudulent claim, or any proof in support of such claim, for the payment of a loss, or other benefits, upon any contract of insurance coverage, or automobile comprehensive or collision insurance, or certificate of such insurance or prepares, makes or subscribes to a false or fraudulent account, certificate, affidavit or proof of loss, or other documents or writing, with intent that the same may be presented or used in support of such claim, is punished as in the case of theft."

submitted as a collision claim and the vehicle was rendered a total loss, the policy only gives you five additional days of rental loss after an offer to settle has been made." Because Plaintiff changed her story during the investigation, she was provided with a rental car for a longer period of time because it took State Farm more time to complete its investigation and make a decision about the claim.

Plaintiff's insurance policy contains the following provision regarding false representations:

> There is no coverage under this policy if you or any other person insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstances in connection with any claim under this policy.

Plaintiff's deductible was $250 for property damage to her vehicle resulting from a collision when her car was being driven by an insured driver. The policy defines an insured driver to include anyone operating Plaintiff's vehicle within the scope of her consent and, therefore, Perry was an insured driver. However, there was no applicable deductible if Plaintiff's vehicle was damaged after being stolen.

State Farm filed a motion for summary judgment claiming Plaintiff was not entitled to any proceeds from her insurance policy because of her intentional and material misrepresentations and her failure to cooperate in the investigation of the claim by not telling the truth. State Farm also claimed Plaintiff's misrepresentations lengthened the investigation and increased the expenses attendant thereto.

The Trial Court granted State Farm's motion for summary judgment after concluding the material facts were not in dispute and reasonable minds could reach only one conclusion, which was that Plaintiff intended to deceive State Farm as to material facts regarding her loss. The Trial Court also held that it was not necessary for State Farm to show an increase in the risk of loss resulting from the misrepresentations.

Plaintiff appeals claiming the Trial Court erred when it granted State Farm's motion for summary judgment because there were genuine issues of material fact regarding whether Plaintiff intended to deceive State Farm and whether the misrepresentations were material.

### Discussion

In *Blair v. West Town Mall*, our Supreme Court recently reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004). In *Blair*, the Court stated:

-5-

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples*, 15 S.W.3d at 88.

\* \* \*

When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair*, 130 S.W.3d at 763-64, 767 (quoting *Staples*, 15 S.W.3d at 88-89).

Our Supreme Court also has provided instruction regarding assessing the evidence when dealing with a motion for summary judgment, stating:

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party

-6-

and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

Before we discuss whether the Trial Court properly granted State Farm's motion for summary judgment, we note that this case does not involve a misrepresentation alleged to have been made in an application for insurance. In cases involving misrepresentations in an application for insurance, the Tennessee Legislature has set forth specific instructions on what must be proven for such misrepresentations to be deemed material in order for coverage to be voided. Specifically, a misrepresentation in an application for insurance cannot be deemed material "unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increased the risk of loss." Tenn. Code Ann. § 56-7-103. This statute was passed originally in 1895 and there are numerous cases discussing its application.

The number of cases addressing post-loss misrepresentations are not as plentiful. The following general discussion is contained in 46A C.J.S. *Insurance* § 1249 (1993 & Supp. 2004):

An insurance company has a compelling interest in and a right to accuracy in the proof of loss forms; and in some policies there is a provision that any fraud or false swearing by insured relating to the loss or in the proofs of loss forfeits any right of recovery by him, a usual provision being that the policy shall be void in case of any fraud or false swearing by insured touching any matter relating to the insurance or the subject thereof, whether before or after a loss.

* * *

Generally speaking, false swearing consists in knowingly and intentionally stating on oath what is not true, or the statement on oath of a fact as true which the insured does not know to be true, and which he has no reasonable ground for believing to be true. To avoid the policy, the false statements must have been made intentionally and willfully; and under some authority, although not all, they must have been made with an intent to deceive or defraud.

To establish the defense of misrepresentation of proofs of loss, an insurance company must demonstrate that representations

-7-

made by insured were relevant, material and intentionally false. However, a misrepresentation after loss need only be made with actual intent to deceive the insurance company and be related to the matter which is material. Under policy provisions voiding coverage for fraud or false swearing, concealment or misrepresentation, recovery will be denied to insured who has made deliberate material misstatements in a sworn proof of loss. Rights under a policy are not to be forfeited except for concealment or misrepresentation relative to the loss claimed.

An insurance company need not establish that it relied to its prejudice upon false or fraudulent statements in a proof of loss in order to establish a breach of contract and void the policy.

\* \* \*

Generally, the issue of whether insured's false statement to the insurance company was knowingly and intelligently made with knowledge of its falsity, and with intent to defraud, is a question of fact.… The materiality of false representations to an insurance company for recovery on a claim is a mixed question of law and fact which can be decided as a matter of law if reasonable minds could not differ.

46A C.J.S. *Insurance* §1249, at pp 77-79 (citations omitted). *Accord* 44 Am. Jur. 2d *Insurance* § 1371 (1982 & Supp. 2002) (Under policy provisions which provide that false swearing will relieve the insurer from liability, "false statements as to material matters willfully made by the insured in proofs of loss with the intention of deceiving the insurer will preclude any recovery on the policy by the insured; and conversely, to constitute fraud or false swearing under such a provision, there must be false statements willfully made with respect to a material matter and with the intention of thereby deceiving the insurer.… The motives prompting an insured to swear falsely are … immaterial; and even though his purpose in so doing is not to cheat the insurer, but to accomplish some other end, the false statement avoids the policy.")(citations omitted).

In *Nix v. Sentry Ins.*, 666 S.W.2d 462 (Tenn. Ct. App. 1983), the plaintiff suffered a fire loss and filed suit after the defendant insurance company refused to pay the loss. The issues at trial centered around whether the plaintiff had committed arson and whether the plaintiff had made material misrepresentations regarding what property actually was destroyed by the fire and its value. The trial court held that while the plaintiff had not committed arson, he had made material misrepresentations regarding the value of the property destroyed in the fire which relieved the defendant of any liability for the loss. *Id*. at 462. On appeal, this Court concluded that the evidence did not preponderate against the trial court's conclusion that the plaintiff had not committed arson.

However, we reversed the trial court's conclusion that the plaintiff had made material misrepresentations. In so doing, we stated:

> It should be noted that we are not here dealing with an alleged materially false statement made in an *application* for insurance. Such a statement would void the policy *ab initio*. *Brewer vs. Mid-West National Life Insurance Company of Tennessee*, (1979 M.S. Tenn. App.) 605 S.W.2d 232. We are here dealing with allegedly false statements or false swearings made subsequent to the issuance of the policy and in connection with a loss. In *Boston Marine Insurance Company vs. Scales*, (1899) 101 Tenn. 629, the Tennessee Supreme Court had before it an insurance policy with similar provision as in this case. The insurer defended on the basis of an alleged false proof of loss as an avoidance of the policy. The Court held that in order to void the policy any *false statements in a proof of loss must be willfully false in some material matter and made with intent to deceive*.

*Nix*, 666 S.W.2d at 463-64 (emphasis added). The *Nix* Court then quoted the following from *Boston Marine*:

> When the false swearing is in the application it forms the basis upon which the contract rests, and if fraud enters into it the policy would be voided even though the policy does not so provide. But after the loss occurs then voiding the policy is in the nature of a penalty or forfeiture; in other words, in such cases the holding is virtually that, although the insured has had a loss, and may be entitled to recover from it, yet, as he has been guilty of fraud in the proofs, he must have his policy vacated and set aside as a punishment for such fraud, or attempted fraud. In the latter case, as in all cases of forfeiture, a strict construction should be adopted, and the forfeiture not enforced except on the plainest grounds, if at all.

*See Nix*, 666 S.W.2d at 463-46; *Boston Marine*, 101 Tenn. 628, 49 S.W. at 746 (Tenn. 1899).

After affirming the trial court's decision that the plaintiff had not committed arson, we held "that if rights are to be forfeited under the terms of this insurance policy, the concealment or misrepresentation made must be relative to the loss claimed." *Id*. at 464. We then reviewed the evidence pertaining to the alleged misrepresentations regarding the value of items alleged to have been destroyed in the fire, and concluded that the evidence did not support a conclusion that the plaintiff had made any material misrepresentations on these matters. *Id.* at 464-65. *See also Matthews v. Auto Owners Mutual Ins. Co.*, 680 F. Supp. 287, 289 (M.D. Tenn. 1988)("Under Tennessee law… material misrepresentations made in a proof of loss statement do not void an

insurance policy, unless evidence establishes, on the plainest grounds, that the misrepresentations were willfully and knowingly made with the intent to deceive or defraud the insurer.").

The more recent case of *Joyner v. Omaha Property and Casualty Ins. Co.*, No. 02A01-9301-CV-00021, 1993 Tenn. App. Lexis 518 (Tenn. Ct. App. Aug. 4, 1993), *no appl. perm appeal filed*, involved a claim pursuant to an automobile insurance policy after the insured vehicle, a 1988 Pontiac Firebird, was stolen for a second time. The first time the vehicle was stolen the plaintiff reported the theft to the police. However, the plaintiff did not report the first theft to his insurance company because the vehicle was recovered the very next day. The vehicle was stolen again less than two months later. *Joyner*, 1993 Tenn. App. LEXIS 518, at *1. One of the issues on appeal was whether the plaintiff's alleged post-loss misrepresentations rendered the insurance coverage void. One of the alleged misrepresentations involved the plaintiff being asked if he had had any *other* cars stolen, and his response that he had not. The defendant insurance company claimed the plaintiff had materially misrepresented the first theft. However, the plaintiff claimed in an affidavit that he understood the question to mean whether any cars other than the 1988 Pontiac had been stolen. The other claimed misrepresentations centered around the plaintiff's response on the claim form about damage incurred to the vehicle from the first theft. We noted that the claim form did not have a place for an explanation and the plaintiff had explained his response to the insurance company. *Id*. at * 7. The *Joyner* Court then reviewed the applicable law regarding post-loss misrepresentations, concluding that the prevailing law in this jurisdiction regarding post-loss misrepresentations was that the "false statements must be willfully false in some material matter and made with the intent to deceive." *Id*. at ** 14-15. We then noted that intent to deceive was a question of fact and there were genuine issues of material fact regarding whether the plaintiff intended to deceive the insurance company. Accordingly, we reversed the trial court's granting of summary judgment to the defendant.

Returning to the present case, there is no doubt that Plaintiff made several willful misrepresentations. Plaintiff claims summary judgment was not appropriate because genuine issues of material fact exist regarding whether she: (1) intended to deceive State Farm; and (2) whether the misrepresentations were material. As to the first issue, State Farm has the burden of proving that Plaintiff either intended to deceive or defraud the insurer. State Farm does not claim Plaintiff's intent was to defraud. Rather, State Farm asserts that the undisputed material facts demonstrate that Plaintiff intended to deceive State Farm.[4]

In her brief, Plaintiff simply asserts that she had no intent to deceive State Farm because she was "merely attempting to protect the third party driver from perceived criminal prosecution." We believe this argument misinterprets an intent to deceive versus an intent to defraud. The undisputed material facts demonstrate without question that Plaintiff intended to deceive State Farm about how the accident occurred. Plaintiff admitted in her deposition that she

---

[4]There is no proof in the record that Plaintiff misrepresented her car to be stolen in order to avoid having to pay the $250 deductible associated with a collision claim, or to otherwise cheat State Farm out of any money.

-10-

lied to State Farm over and over again and in fact lied under oath and continued this course of deception up until the time Beedle interviewed Plaintiff's alleged witnesses and her "story" fell apart. Since we are reviewing a grant of summary judgment, we must and do assume that Plaintiff is correct when she claims her motivation for making the misrepresentations was to protect Perry. Even so, this does not change the undeniable fact that she intended to deceive State Farm during the course of protecting Perry. We fail to see how Plaintiff can contend in any serious manner that she did not intend to deceive State Farm when she admittedly lied about her car being stolen, lied about whether she loaned the car to a friend, lied about knowing who was driving the car when it was wrecked, submitted a sworn affidavit with false testimony, etc. This issue is without merit.

Plaintiff's primary argument on appeal involves the next issue, which is whether her admitted misrepresentations were material. Plaintiff argues that the misrepresentations were not material because State Farm was not prejudiced by the lies and because the damage to her car was a covered loss regardless of whether the car was stolen or being driven by Perry with her permission at the time of the accident. The Trial Court held that the misrepresentations were material and further held that State Farm was not required to show an increase in the risk of loss resulting from the misrepresentations.

As noted previously, when a misrepresentation is made in an application for insurance, coverage cannot be voided unless the insurance company proves the misrepresentation was "made with actual intent to deceive, *or* unless the matter represented increased the risk of loss." Tenn. Code Ann. § 56-7-103 (emphasis added). Although we have explained that this statute does not apply to the present case, we assume the Trial Court was analogizing to this statute when it concluded State Farm did not have to establish an increased risk of loss. It is true under this statute that an insurance company would not have to establish an increased risk of loss if it has proven an intent to deceive. We believe when the Legislature used the phrase "increased the risk of loss" it intended to refer to the risk of loss associated with determining whether a risk is insurable and, therefore, would not apply to cases involving post-loss misrepresentations. To the extent the Trial Court meant that State Farm was not required to prove that it actually lost money as a result of the misrepresentation, we agree that is not a requirement under the applicable Tennessee law discussed previously in this Opinion. However, it certainly could be a relevant consideration in determining whether a misrepresentation was "material."

When an insured suffers a loss, the first step is to report the loss to the insurance company. The first bit of important information the insurance company needs to know when it begins to process the claim is how the loss occurred. Here, Plaintiff intentionally misrepresented this important information. This misrepresentation is clearly "relative to the loss claimed." *Nix*, 666 S.W.2d at 464. The nature of the misrepresentation, i.e. reporting the car stolen, directly impacted how State Farm investigated the claim. This can better be understood by examining the overall scenario State Farm was dealing with when Plaintiff was insisting that her car was stolen. Pursuant to this scenario, Plaintiff's insurance policy only would have covered damage to Plaintiff's vehicle. The policy would not have covered: (1) any personal injury to the driver/thief; (2) damage to any other vehicles or personal injury to their occupants; (3) personal injury to any pedestrians or

bystanders; or (4) damage to any other type of property resulting from the accident, such as mailboxes or fences and the like. Plaintiff's vehicle was not involved in a minor fender-bender. The car was a total loss and it either flipped or rolled over and landed on its top. Due to the significant nature of the wreck, there was certainly more potential for personal injury, including injury to any passenger, or damage to other vehicles or property than would be the case if the car had been involved in a minor accident. State Farm was aware of the nature of the accident, but because it believed the car to have been stolen it did not investigate whether any type of non-covered damage or injury had taken place. Since there was no applicable deductible, State Farm was responsible for the full amount of the loss to Plaintiff's vehicle. The identity of the alleged thief also was important to State Farm because it would have the right to file a subrogation lawsuit in the future in an attempt to recover any money it ultimately paid to Plaintiff.

Once Plaintiff decided to come clean and tell State Farm what really happened, the overall scenario dramatically changed and, for the most part, the opposite became true. State Farm now was concerned with potential exposure for personal injuries, including possible injury to the passenger, and property damage resulting from the accident. There was a potential for serious personal injury claims given that the car had rolled over and landed on its top with two occupants in the vehicle. Unfortunately, by this time it was at least two weeks post-accident and critical investigation time was lost forever. Even assuming that the passenger in the vehicle, Kenny Stanley, has made no claim for any personal injuries, such a fact could not have been known with certainty at the time Plaintiff made her willful misrepresentations. In determining whether a misrepresentation was material, the misrepresentation must be viewed at the time it was made and not in hindsight. Here, State Farm had the serious potential liability for personal injuries to the passenger, but was delayed in its investigation along that line for two weeks because of Plaintiff's willful misrepresentations. In addition, State Farm no longer had a potential subrogation claim. Plaintiff now had a $250 deductible for any loss to her vehicle. The time it took State Farm to investigate Plaintiff's claim necessarily was lengthened once she came clean and, because of that, State Farm was obligated to provide her with a rental car for a longer period of time than would have been the case had Plaintiff told the truth from the beginning.

Based on the foregoing, we conclude that Plaintiff's willful misrepresentations indeed were material and this is so even though the damage to her vehicle would have been covered under the policy regardless of whether the car was stolen or being driven by Perry with Plaintiff's permission when the accident occurred. Although by reporting her car stolen Plaintiff would not have had to pay a $250 deductible, we need not and do not decide whether this fact, standing alone, would be sufficient to make her misrepresentations "material." Finally, we note that our holding should not be read as meaning that a misrepresentation regarding how a loss occurred always will be deemed material. We simply conclude that the undisputed facts in this case establish that the Trial Court correctly characterized Plaintiff's willful misrepresentations as material and made with the intent to deceive. The Trial Court, therefore, properly granted State Farm's motion for summary judgment.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are assessed against the Appellant, Denise Wassom, and her surety.

_____
D. MICHAEL SWINEY, JUDGE