SHERYL H. LIPMAN, UNITED STATES DISTRICT JUDGE
A famed American singer-songwriter might summarize the case before the Court thusly:
Married couple, Allstate, damage to the real estate, Claim is filed, facts compiled, claim denied.
Arson or a tragedy? Forgetful or a fallacy?
*817 Experts! Statements! Video surveillance!
because Plaintiffs David and Latusha Love deny that they started the fire.[1] As such, they have brought a claim against Defendant Allstate Vehicle and Property Insurance Company ("Allstate") for the wrongful denial of their homeowners insurance claim.
Before the Court is Defendant's Motion for Summary Judgment, filed December 1, 2017. (ECF No. 21.) Allstate argues that Plaintiffs' insurance policy was voided, and the claim justifiably denied, either because Plaintiffs made material, post-loss misrepresentations with the intent to deceive or defraud Allstate, or because the undisputed material facts conclusively establish their civil arson defense. Plaintiffs responded on January 17, 2018, after receiving an extension of time. (ECF Nos. 30, 31.) Defendant replied on January 31, 2018. (ECF No. 37.) For the reasons that follow, the Motion is DENIED.
BACKGROUND
On August 19, 2016, a fire damaged David and Latusha Love's home. (ECF No. 31-3 at ¶¶ 1, 2.) The Memphis Fire Department responded to the scene and extinguished the fire. (ECF No. 36 at ¶ 2.) The accident report prepared by the Fire Department suggests that the failure of a fan was to blame. (Id. )
Allstate insured the home, and the Loves submitted a claim for the fire damage. (ECF No. 31-3 at ¶¶ 1, 3.) Upon receiving the claim, Allstate began its own investigation. (ECF No. 31-3 at ¶ 5.) It hired Rick Eley of Investigative Services Companies, LLC, to perform an "origin and cause investigation." (Id. ) In Mr. Eley's opinion, while the fire originated near the HVAC system, the fire was not attributable to an electrical or mechanical failure. (Id. at ¶ 7.) Instead, Mr. Eley concluded that "the cause of the fire was someone igniting flammable [and/or] combustible materials in the hallway of the home." (Id. at ¶ 8.) In Mr. Eley's opinion, the "fire spread and development" shown on the video "is too fast" to have occurred without accelerants. (Id. at ¶ 9.) Mr. Eley also reviewed a copy of a neighbor's video surveillance footage from the night in question. (Id. ) The parties agree that, in the video, Mr. Love is shown leaving the house eleven to twelve minutes before the fire is visible, which occurred at 9:21 p.m. (Id. at ¶ 38.)[2]
Dr. John Owens, an electrical engineer who also investigated the fire on behalf of Allstate, agreed with Dr. Eley that the fire was not attributable to an electrical or mechanical failure. (Id. at ¶ 7.)
Also as part of the insurance company's initial investigation, both David and Latusha Love submitted to examination under oath on October 31, 2016. Mr. Love testified that he worked until 6:45 p.m. the night of the fire, stopped at home and then at his mother's house around 7:00 p.m., and went to a friend's house for a barbeque afterwards. (Id. at ¶¶ 25, 26.) He stated that he was at the barbeque until 10:00 or 11:00 p.m., when he received a call about the fire. (Id. at ¶¶ 24, 28.) The video surveillance footage, however, shows that he stopped back at his home around 9:00 p.m. (Id. at ¶ 38.) In an initial recorded statement taken on September 7, 2016, Mr. Love also failed to mention that he was at home at this time. (Id. at ¶ 27.)[3]
*818 While he now acknowledges the discrepancy between the video and the "approximate times" to which he initially testified (see id. at ¶¶ 26, 27, 36), Mr. Love denies that he caused the fire. (ECF No. 36 at ¶ 1.)
Also during the examination under oath, the Loves testified to Mrs. Love's whereabouts differently. Mr. Love testified that his wife had spent the night before the fire at her sister's house, and that she was not at home the night of the fire. (ECF No. 31-3 at ¶¶ 34, 35.) As for the night of the fire, the parties dispute whether Mr. Love "stated definitively" that Mrs. Love was on "a ladies' night out." (Id. at ¶ 35.) Mrs. Love testified that she spent the night before the fire at home, and that she was at work on the night of the fire. (Id. at ¶¶ 32, 33.)
Allstate also questioned the Loves about their financial situation. In November 2015, Mrs. Love suffered an on-the-job injury and began receiving workers compensation, reducing her take-home pay from $1,400 to $800 every two weeks. (Id. at ¶¶ 10, 20.) As a result, the Loves "fell behind financially." (See id. at ¶ 18.) At the time of the fire, the Loves "were behind one month on their house note." (Id. at ¶ 13.) Shortly before the fire, Mr. Love discovered "a shorted wire in the vicinity of his hot water heater" but "did not have the estimated $150.00" necessary to repair it. (Id. at ¶ 14, 16.)
In December 2016, following its investigation, Allstate denied the Loves' claim. (Denial Letter, ECF No. 1-2 at 15.) Allstate based its decision on the conclusion that "the fire was incendiary[4 ] in origin, and ... that [an insured person] caused or procured the fire loss." (Id. ) In addition, Allstate claimed that the Loves "made material misrepresentations in the presentment of [their] claim with the intent to deceive or defraud Allstate," including statements regarding Mr. Love's whereabouts before and during the fire and "who was in the house prior to the fire." (Id. ) Both arson and intentional misrepresentations could provide grounds to deny coverage under the policy. (See ECF No. 31-3 at ¶ 4.)
In May 2017, the Loves filed their Complaint in Shelby County Chancery Court, alleging that their insurance claim was wrongfully denied. (ECF No. 1-2 at ¶ 13.)[5] The matter was subsequently removed to this Court. (ECF No. 1.)
STANDARD OF REVIEW AND CHOICE OF LAW
Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court is to view facts in the record and to draw reasonable inferences from those facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
If the movant properly supports the motion for summary judgment, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or must argue that the moving party is not *819 entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). While the Court views all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Moreover, the opposing party "cannot rest solely on the allegations made in [his] pleadings." Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (quoting Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002) ) (alteration in original). Rather, when a motion is supported by documentary proof, the nonmoving party is obligated to present "specific facts showing that there is a genuine issue for trial." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).
The Court's role is not to weigh evidence or assess witness credibility. Id. (citing Anderson, 477 U.S. at 255, 106 S.Ct. 2505 ). Rather, it is simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (quoting Anderson, 477 U.S. at 251-52, 106 S.Ct. 2505 ).
In this case, Tennessee law applies. The insurance policy includes a choice-of-law provision that "the laws of the state in which the residence premises is located shall govern any and all claims or disputes in any way related to this policy." (See Insurance Policy, ECF No. 21-2 at 31.) No party challenges the validity of this provision.
ANALYSIS
In its Motion for Summary Judgment, Allstate argues that Plaintiffs' policy was properly voided for two reasons: (1) because Plaintiffs made material, post-loss misrepresentations with the intent to deceive or defraud Allstate and (2) because the undisputed material facts are sufficient to establish that Mr. Love intentionally set fire to the house. Voiding a policy after a loss occurs is "in the nature of a penalty or a forfeiture," and, as such, "a strict construction should be adopted, and the forfeiture not enforced except on the plainest grounds, if at all." Matthews v. Auto Owners Mut. Ins. Co., 680 F.Supp. 287 (M.D. Tenn. 1988) (quoting Boston Marine Ins. Co. v. Scales, 101 Tenn. 628, 49 S.W. 743, 746 (1899) ). The Court considers both of Allstate's arguments in turn.
A. Material, Post-Loss Misrepresentations with Intent to Deceive or Defraud
Home insurance policies typically provide that fraud on the part of the insured relieves the insurer from liability. McConkey v. Continental Ins. Co., 713 S.W.2d 901, 906 (Tenn. Ct. App. 1984) (citing 44 Am. Jur. 2d Insurance § 1371 ). "Under such a provision, false statements as to material matters willfully made by the insured ... with the intention of thereby deceiving the insurer will preclude any recovery on the policy by the insured." Id. Of note, "to void the policy[,] any false statements ... must be willfully false in some material matter and made with intent to deceive." Wassom v. State Farm Mut. Auto. Ins. Co., 173 S.W.3d 775, 782-83 (Tenn. Ct. App. 2005). Whether false statements were material is a mixed question of law and fact "which can be decided as a matter of law if reasonable minds could not differ." See id. at 781 (quoting 46A C.J.S. Insurance § 1249 ). Whether a *820 claimant intended to deceive is a question of fact. Id. at 781, 783.
Allstate points to two misrepresentations it argues were both material and intentional: Mr. Love's omission of the fact that he was at his home shortly before the fire started, and the Loves differing accounts of where Mrs. Love was on the night before and on the night of the fire. (ECF No. 21-1 at 8-9.) Plaintiffs dispute whether these misrepresentations were both material and intentional.
1. Materiality
At the outset, the Court concludes that Plaintiffs' representations regarding Mrs. Love's whereabouts were not material. To be sure, Plaintiffs cannot both be correct when one says she spent the prior night at the house and one says she did not, or when one states that she was at a "ladies' night" the night of the fire and one believes she was at work. (See ECF No. 21-1 at 9.) But Allstate fails to explain how Mrs. Love's whereabouts the night prior to the fire were material to the investigation at all or why it mattered where she was the night of the fire. (See id. at 8-9.) The material issue for the night in question is that she was not home, which both Loves stated and is not refuted.
On the other hand, the materiality of fact that Mr. Love was at the house approximately twelve minutes-as opposed to two hours-before the fire started is obvious. Indeed, Plaintiffs concede that "David Love's statements concerning the timing of the events on the evening of the fire could be material." (ECF No. 31-1 at 5.) As such, the Court will consider whether this misrepresentation was intentional.
2. Intentionality
"Courts in Tennessee have consistently noted that material misrepresentations ... do not void an insurance policy, unless evidence establishes, on the plainest grounds, that the misrepresentations were willfully and knowingly made with the intent to deceive or defraud the insurer." Sexton v. State Farm Fire & Cas. Co., Case No. 3:09-cv-535, ECF No. 22 at 6, 2011 WL 1748606 (E.D. Tenn. May 5, 2011) ; see also Boston Marine Ins. Co. v. Scales, 101 Tenn. 628, 49 S.W. 743 (1899). Once a material misrepresentation is established, summary judgment is appropriate where the undisputed material facts establish that it was made with the intent to deceive or defraud. Wassom v. State Farm Mut. Auto. Ins. Co., 173 S.W.3d 775, 783-84 (Tenn. Ct. App. 2005). However, courts interpreting Tennessee law have been hesitant to grant summary judgment, even when misrepresentations are "substantial," "certainly suspect" and left unresolved. Sexton v. State Farm Fire & Cas. Co., No. 3:09-cv-335, ECF No. 22 at 10-11, 2011 WL 1748606 (E.D. Tenn. May 5, 2011) ; see also Matthews v. Auto Owners Mut. Ins. Co., 680 F.Supp. 287, 288 (M.D. Tenn. 1988). While "[t]he requisite knowledge and intent can ... be inferred from all of the circumstances under the record," "[t]he intent with which a false representation is made and the existence of fraud ... is ordinarily a question of fact to be decided by the jury." Matthews, 680 F.Supp. at 289 (quoting Trice v. Commercial Union Assurance Co., Ltd., 334 F.2d 673, 676 (6th Cir. 1964) ).
In the present case, Allstate has failed to demonstrate, "on the plainest grounds," that there is no genuine dispute regarding whether Mr. Love intended to deceive Allstate. See Boston Marine, 49 S.W. at 746. Indeed, Allstate points to little else but the fact of the misrepresentation. And Mr. Love offers an explanation-he forgot. (ECF No. 31-1 at 2-3 ; see also David Love Depo. Tr., ECF No. 32-1 at 20, 21.) Mr. Love claims that he "had other stuff on his mind" when he was initially questioned and that counsel "didn't ask [him]" whether he returned to the house. ( *821 Id. at 20, 24.)[6] Mr. Love also specifically denies that "[he] didn't want [counsel] to know" that he had returned to the house. (Id. at 21.) As skeptical as the Court may be of Mr. Love's explanations, intent to deceive is a question of fact, and questions of credibility are more appropriately decided by the jury. Wassom, 173 S.W.3d at 781, 783 ; Matthews, 680 F.Supp. at 289. A reasonable jury could find-if it found Mr. Love to be a credible witness-that Mr. Love did not intend to deceive Allstate. See Anderson, 477 U.S. at 252, 106 S.Ct. 2505.
Allstate makes much of the fact that Mr. Love consistently represented that he was at the barbeque until he was shown the surveillance video. (See ECF No. 21-1 at 9 ; ECF No. 37 at 2-3, 5, 7.) However, a reasonable jury could find that it is normal, once a thing has been forgotten, not to recover one's memory sua sponte-ordinarily, one must be reminded. In addition, the Court observes that Defendant's own expert reports state that Mr. Love did inform Mr. Eley on August 23, 2016-a date even more proximate to the fire than the initial statement, examination under oath or the deposition-that "he left home somewhere around 9PM." (ECF No. 39-3 at 12, 16.)[7]
In an effort to distinguish Plaintiffs' case law on this issue, Allstate points out that Plaintiffs' explanation does not involve reliance on an Allstate agent or a lawyer's advice, and that mental stress will not absolve an otherwise knowing material representation. (ECF No. 37 at 5.) The Court agrees with both of these assertions, but does not believe that either is sufficient to wrest the credibility determination from the jury.
B. Civil Arson Defense
Allstate next argues that summary judgment is appropriate because the undisputed material facts support a civil arson defense. In Tennessee, "[t]o make out a defense of arson, a fire insurance company must show by a preponderance of the evidence that the loss was due to a fire of incendiary origin, that the insured had an opportunity to set the fire, and that he had a motive to do so." McReynolds v. Cherokee Ins. Co., 815 S.W.2d 208, 211 (Tenn. Ct. App. 1991). These elements "may be proved by ... circumstantial evidence." Id. The Court agrees with Allstate that the undisputed evidence suggests that Mr. Love had both a motive to set the fire and that he had the opportunity to do so, and Plaintiffs do not explicitly challenge these conclusions. (See ECF No. 31-1 at 1-2.)
However, Plaintiffs do challenge whether the fire was "of incendiary origin." (See id. ) While Plaintiffs do not dispute that Mr. Eley arrived at this conclusion, they do dispute whether this conclusion is correct. (Response to Def.'s Statement of Undisputed Material Facts, ECF No. 31-3 at ¶¶ 6-9.) Plaintiffs point to the Memphis Fire Department incident report, which suggests that the cause of the fire was the "[f]ailure of equipment or heat source," specifically, a "[w]orn out ... [f]an." (ECF No. 38-1 at 4.)[8] Plaintiffs have also listed *822 Franklin Hobbs and Daniel Moore, the "two firefighters who completed the official report concerning the fire," in their Rule 26 Expert Disclosure, in anticipation "that said officers will testify that[,] in their opinion, the cause of ignition of the fire ... was failure of equipment or heat source; the malfunction of a worn out fan located in the house; and that no human factors contributed to ignition." (ECF No. 20-1 at 1.)
Defendant replies that the Court is not obliged to adopt a version of the facts that is "wholly unsupportable" in light of the surveillance footage. Kinlin v. Kline, 749 F.3d 573, 576 (6th Cir. 2014) ; see also Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Although the Court agrees with this statement as a general proposition, Defendant submitted the wrong video for consideration with its Motion.[9] More importantly, however, the agreed-upon description of the surveillance footage does not lead to an uncontested conclusion that Mr. Love started the fire. Mr. Love does not now dispute that he was at home, providing the opportunity necessary to support Allstate's civil arson defense. He does dispute that he started the fire. While it is certainly suspect that he was at the house shortly before the fire began, a reasonable jury could also find, based on his testimony, that it was coincidental.
Defendant also argues that the video should be viewed in conjunction with Mr. Eley's opinion that "an accelerant must have been used to cause the fire to progress as quickly as it did." (ECF No. 37 at 9.) Defendant acknowledges, however, that Plaintiffs challenge the lack of expressed methodology related to this "conclusory position," noting that it is "unsupported by any test results or data." (ECF No. 31-1 at 2.) Indeed, Plaintiffs' Motion to Exclude Mr. Eley remains pending, and resolution in their favor may ultimately mean that this opinion is inadmissible. (See ECF No. 39 at 5-6.) Even if it is not excluded, a jury could choose not to credit Mr. Eley's opinion on this point.
Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiffs, the Court concludes that there is a genuine issue of disputed material fact as to whether the fire was incendiary in nature. As such, summary judgment on Defendant's civil arson defense is inappropriate.
CONCLUSION
Allstate is not entitled to summary judgment on either of its theories. As to whether Plaintiffs made material, post-loss misrepresentations with intent to deceive or defraud, Allstate has not carried its burden of demonstrating that the statements regarding Mrs. Love's whereabouts were material. While Mr. Love's omission of the fact that he was home shortly before the fire started was material, the Court finds that his deposition testimony creates a genuine dispute of material fact regarding whether he intended to deceive or defraud Allstate.
As to Allstate's civil arson defense, there is a genuine dispute of material fact regarding whether the fire was "incendiary in origin," one of the elements of this defense. Plaintiffs challenge the reliability of Mr. Eley's conclusions, and point to the report of the Memphis Fire Department as creating a genuine issue for trial. Without weighing the evidence, the Court concludes that there is a disagreement sufficient *823 to require submission to a jury. As such, the Motion for Summary Judgment is DENIED.
IT IS SO ORDERED , this 30th day of May, 2018.

See Billy Joel, We Didn't Start the Fire (Universal Music Publishing Group 1989).

The Court was unable, however, to review the relevant surveillance footage. The DVD disc submitted to the Court appears to include two half-hour videos of a Walmart customer service desk and checkout area dated May 7, 2015.

The Court observes, however, that Mr. Eley's reports indicate that Mr. Love told Mr. Eley on August 23 "that he left home somewhere around 9 PM." (ECF No. 39-3 at 12, 16.)

"[I]ntentionally ignited under circumstances in which the person knows that the fire should not be ignited;" as opposed to "accidental" or "natural." See National Fire Protection Association, NFPA 921: Guide for Fire and Explosive Investigations 19.2.1 (5th ed. 2004).

Plaintiffs also originally claimed that the claim was denied in bad faith. However, they have withdrawn that claim. (ECF No. 31-1 at 7.)

Plaintiffs argue that they were "in some mental distress" because they were dealing with workers' compensation claims and some financial pressure. (ECF No. 31-1 at 5.) These assertions are supported by Plaintiffs' sworn statements. Plaintiffs also suggest that they were in "a personal situation which was complicated at best and which placed additional stress on them," but do not provide support for this assertion in the record. (Id. ) As such, the Court declines to consider it.

Given Mr. Love's early admission of this fact but later contradictory statements, it is unclear to the Court who this fact benefits. This, too, is a question for the jury.

Allstate complains that Plaintiffs failed to attach the Fire Report to their Response. (ECF No. 37 at 10.) However, Allstate itself provides the Fire Report in response to Plaintiffs' Statement of Additional Material Facts. (ECF Nos. 36, 38.) In addition, Allstate acknowledges the existence of the Fire Report in the Statement of Undisputed Material Facts. (ECF No. 36 at 2.) The Court declines to ignore this evidence simply because it should have been provided sooner rather than later.

See supra at n.1.